570 So.2d 984 (1990)
Brandon David LLOYD, a Minor Child, by and through His Parents, Anthony D. LLOYD and Diane S. Lloyd, and Anthony D. Lloyd and Diane S. Lloyd, Individually, Appellants,
v.
NORTH BROWARD HOSPITAL DISTRICT, Etc., et al., Appellees.
Nos. 87-2250, 88-1419.
District Court of Appeal of Florida, Third District.
July 10, 1990.
On Motion for Rehearing, Clarification and Certification December 18, 1990.
*985 Searcy, Denney, Scarola, Barnhart & Shipley and James L. Torres, Edna L. Caruso and Philip M. Burlington, West Palm Beach, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel Eaton, Miami, for appellants.
Wolpe, Leibowitz, Berger & Brotman, Fowler, White, Burnett, Hurley, Banick & Strickroot and A. Blackwell Stieglitz, Miami, Korman, Schorr & Wagenheim, Ft. Lauderdale, Stephens, Lynn, Klein & McNicholas and Debra J. Snow and Robert M. Klein, Miami, Miller, Hodges, Kagan & Chait, Deerfield Beach, and G.J. Godfrey, Miami, for appellees.
Before HUBBART, FERGUSON and COPE, JJ.
COPE, Judge.
Anthony, Diane and Brandon Lloyd appeal adverse judgments in their suit for wrongful birth and wrongful life. We affirm in part and reverse in part.
The present appeal is one from a summary judgment against Mr. and Mrs. Lloyd on the basis of the statute of limitations, and from orders striking certain other claims. For purposes of this appeal we take the facts in the light most favorable to the Lloyds.
In 1976 Anthony and Diane Lloyd had a son, Michael, who was born severely deformed and severely retarded. The Lloyds sought an evaluation to determine if Michael's deformities were the result of an inheritable genetic defect so that they could determine whether to have more children. Mr. and Mrs. Lloyd consulted initially with their pediatrician, appellee Dr. Pedro Diaz, who referred them to other health care providers for testing. The other appellees are health care providers to whom Mr. and Mrs. Lloyd were referred, and were involved at various stages in one or another of the aspects of the testing.
Some of the genetic testing results were normal. Those findings were reported to Dr. Diaz along with the information that a fluorescent banding study was being performed and was not complete. Dr. Diaz was advised that he would be informed if *986 the results were abnormal. Dr. Diaz was never provided any results of any abnormality.
In the absence of any negative information, Dr. Diaz assured the Lloyds that Michael's abnormalities were an accident of nature, rather than the result of a genetic defect. Dr. Diaz recommended that the Lloyds have another child. For present purposes, the last date of provision of health care to the Lloyds was December 31, 1978.
Acting on the advice, the Lloyds proceeded with family plans. Mrs. Lloyd became pregnant twice in 1982 but both pregnancies ended in miscarriages. On December 24, 1983 Brandon Lloyd was born. He suffers from the identical physical and mental abnormalities as Michael.
The Lloyds initiated genetic testing of Brandon. Those tests revealed a genetic abnormality. The Lloyds then requested that the same laboratory evaluate the raw data from the chromosome studies that had been earlier performed upon Michael. The evaluation showed that Michael had the same genetic abnormality, and that both children had inherited the abnormality through the mother. It appears that through a personnel change or other error, the late 1970's fluorescent banding studies of Michael, which revealed the genetic defect, were never communicated either to the Lloyds or Dr. Diaz.
The Lloyds initiated a medical malpractice action against the appellees, which was filed within two years after Brandon's birth. Mr. and Mrs. Lloyd brought suit on their own behalf for the "wrongful birth" of Brandon, in which they claimed damages for the extraordinary expenses required to care for Brandon and damages for their own mental anguish. They also brought suit for "wrongful life" on behalf of Brandon.
The trial court dismissed Brandon's claims for wrongful life for failure to state a cause of action. The court entered summary judgment against Mr. and Mrs. Lloyd on the basis of the statute of limitations. The court also ruled that, in any event, Mr. and Mrs. Lloyds' claims for mental anguish were not cognizable in the "wrongful birth" action.
We first consider the statute of limitations issue. Insofar as pertinent here, paragraph 95.11(4)(b), Florida Statutes (1985), provides:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued.

(Emphasis added).[1] As the last health advice was given to the Lloyds at the end of 1978, and suit was not filed until 1985, the trial court concluded that the action was barred by the four-year statute of repose.
The effect of the trial court's ruling was to hold that the limitation period expired before Brandon was born. Under that approach, the limitation period expired before the Lloyds had experienced any injury and before they had any awareness of a possible claim.
Dispositive for present purposes is our court's decision in Williams v. Spiegel, 512 So.2d 1080 (Fla. 3d DCA 1987), quashed in *987 part on other grounds, 545 So.2d 1360 (Fla. 1989). There the court defined "incident" as "an injury caused by medical malpractice... ." Id. at 1081 (emphasis added); accord Elliot v. Barrow, 526 So.2d 989 (Fla. 1st DCA), review denied, 536 So.2d 244 (Fla. 1988); Scherer v. Schultz, 468 So.2d 539 (Fla. 4th DCA 1985); Florida Patient's Compensation Fund v. Tillman, 453 So.2d 1376 (Fla. 4th DCA 1984), aff'd on this issue, 487 So.2d 1032 (Fla. 1986). See generally Jackson v. Georgopolous, 552 So.2d 215 (Fla. 2d DCA 1989) (Lehan, J. concurring specially). Until Mrs. Lloyd gave birth to a live baby, Brandon, the Lloyds had suffered no injury. The relevant moment for purposes of the statute was the date of the child's birth. The lawsuit was therefore timely.
Appellees argue that the statutory "incident or occurrence" should be interpreted to mean the erroneous medical advice, rather than the birth of Brandon. Appellees rely in part on Carr v. Broward County, 541 So.2d 92 (Fla. 1989), but Carr is consistent with the approach we take here. In Carr the Florida Supreme Court held that the seven-year statute of repose could constitutionally be applied to bar an action for medical malpractice.[2] In that case "the brain damage injury to the Carr infant was a completed fact at the time of birth... ." 541 So.2d at 94. The allegations of negligence in that case included claims for negligent prenatal and obstetrical care, as well as care rendered during birth. In the present case, as in Carr, the "occurrence" for purposes of the statute of repose was the birth of the infant. See also Nardone v. Reynolds, 333 So.2d 25, 40 (Fla. 1976) ("The nature of the infant's condition was patent in 1965, before his discharge from the hospital... ."); Barron v. Shapiro, 565 So.2d 1319, 1321 (Fla. 1990) ("Applying the principle of Nardone to the facts of this case, it is apparent that the Shapiros were on notice of Mr. Shapiro's injury by at least December 31, 1979. As Mrs. Shapiro put it, her husband went in for an operation on his colon and came out blind.").
Appellees also rely on cases decided under the statute of limitations for products liability actions, and in particular Pullum v. Cincinnati, Inc., 476 So.2d 657 (Fla. 1985), appeal dismissed, 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986). The approach we take is, however, consistent with Pullum. There the plaintiff was injured prior to the expiration of the twelve-year statute of repose set forth in subsection 95.031(2), Florida Statutes (1979), but did not bring suit until two years after expiration of the statute of repose. 476 So.2d at 658-59. Although the court upheld the statute of repose, it distinguished Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981). 476 So.2d at 659 fn. The court stated, in part:
In Diamond, the defective product, a drug known as diethylstilbestrol produced by Squibb, was ingested during plaintiff mother's pregnancy shortly after purchase of the drug between 1955-1956. The drug's effects, however, did not become manifest until after plaintiff daughter reached puberty. Under these circumstances, if the statute applied, plaintiffs' claim would have been barred even though the injury caused by the product did not become evident until over twelve years after the product had been ingested. The legislature, no doubt, did not contemplate the application of this statute to the facts in Diamond. Were it applicable, there certainly would have been a denial of access to the courts.
476 So.2d at 659 fn.
While a different statute applies to the present case, the reasoning of Pullum lends support to the statutory construction we adopt here. Under familiar principles of statutory construction, we are obliged to adopt the construction which will render the statute constitutional, rather than unconstitutional. See, e.g., Sandlin v. Criminal Justice Standards & Training Comm'n, 531 So.2d 1344, 1346 (Fla. 1988); Emhart Corp. v. Brantley, 257 So.2d 273, 275 (Fla. 3d DCA 1972). The interpretation we have adopted is, in our view, logical and avoids a construction which would otherwise *988 render the statute infirm under article I, section 21 of the Florida Constitution. As the action was not time-barred, we reverse the summary judgment.
We next consider the trial court's order striking Mr. and Mrs. Lloyd's claim for mental anguish. The Florida Supreme Court recognized a cause of action for the wrongful birth of a deformed child in Fassoulas v. Ramey, 450 So.2d 822 (Fla. 1984). Fassoulas allows the parents to recover "special upbringing expenses associated with a deformed child," id. at 824 (citation omitted), but not ordinary child rearing costs. Id. The Fassoulas court expressly did not reach the issue of claims for parental pain and suffering. Id.
In considering Mr. and Mrs. Lloyd's claim for mental anguish, the trial court followed Moores v. Lucas, 405 So.2d 1022 (Fla. 5th DCA 1981). That case holds that parental claims for past and future emotional pain and suffering are barred by the impact rule. Id. at 1026. The trial court followed Moores and struck the parental claims for mental anguish.
We decline to follow Moores on that issue, and conclude that damages for mental anguish are recoverable. Mr. and Mrs. Lloyd's "wrongful birth" claim is a tort cause of action recognized in Fassoulas. Under that decision, they may claim compensatory damages for the special care expenses for Brandon. The claim for mental anguish is properly viewed as an additional element of their claim for damages. See generally Ramey v. Fassoulas, 414 So.2d 198, 199 (Fla. 3d DCA 1982) ("the recoverable items of damages tend to be much the same as any other negligence malpractice action... ."), aff'd, 450 So.2d 822 (Fla. 1984).
Appellees argue that the impact rule bars recovery here. For two distinct reasons, we disagree. First, the impact rule comes into play "[w]here the defendant's negligence causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, and in the absence of some other independent basis for tort liability. ..." W. Keeton, Prosser & Keeton on The Law of Torts, § 54, at 361 (1984) (emphasis added); see Brown v. Cadillac Motor Car Division, 468 So.2d 903, 903-04 (Fla. 1985), affirming Cadillac Motor Car Division v. Brown, 428 So.2d 301, 302 (Fla. 3d DCA 1983) (plaintiff's sole claim was for emotional distress); Restatement (Second) of Torts § 47 & Comment b (1965).[3] Here, however, there has been an injury to the parents' legally protected interest, for which the parents are entitled to compensatory damages under the measure approved in Fassoulas. Under the facts of the present case, emotional distress is a natural consequence of the tort and is properly seen as an additional element of damage incident to the "wrongful birth" claim. See, e.g., Gallagher v. Duke University, 852 F.2d 773, 778-79 (4th Cir.1988); Phillips v. United States, 575 F. Supp. 1309, 1317-19 (D.S.C. 1983); Naccash v. Burger, 223 Va. 406, 290 S.E.2d 825, 830-31 (1982). Contra Moores, 405 So.2d at 1024-26; Siemieniec v. Lutheran Gen. Hosp., 117 Ill.2d 230, 111 Ill.Dec. 302, 310-11, 512 N.E.2d 691, 707-08 (1987); Jacobs v. Theimer, 519 S.W.2d 846, 850 (Tex. 1975). See generally W. Keeton, Prosser & Keeton on The Law of Torts, § 55, at 371.
Second, if it is assumed arguendo that the impact rule does apply, the rule has been satisfied. Mr. and Mrs. Lloyd submitted to physical testing after Michael's birth and on the basis of the medical advice, Mrs. Lloyd proceeded through two unsuccessful pregnancies, as well as the birth of Brandon. Under either analysis, *989 the claims for mental anguish should not have been stricken.[4]
We next turn to Brandon's claim for damages for "wrongful life" for having been born as a result of the appellees' negligence. The trial court struck the claims on behalf of Brandon for failure to state a cause of action.
The "wrongful life" claim presents two distinct theories of recovery. The first of these is a claim for general damages on account of the child's severely impaired existence. We concur with the trial judge that such a claim is not cognizable. This result follows, in our view, from Fassoulas v. Ramey, which has declined to compensate parents where there has been an unintended birth. 450 So.2d at 823-24; see also Ramey v. Fassoulas, 414 So.2d at 199-201. In common with the other courts to have considered the issue, we decline to recognize a cause of action for general damages for wrongful life. See, e.g., Moores v. Lucas, 405 So.2d at 1024-26; Viccaro v. Milunsky, 406 Mass. 777, 551 N.E.2d 8, 12-13 (1990).
The second aspect of the "wrongful life" claim is the request for special damages for the care and maintenance required for Brandon on account of his severe mental and physical impairment. According to the record now before us, Brandon has essentially a normal life expectancy, but his disabilities will not improve and will last throughout his lifetime.
In Fassoulas, the supreme court left open "[t]he issue of whether, by whom, and under what circumstances, special damages may be recoverable beyond the age of majority if severe infirmities, such as mental retardation, preclude an individual from being self-sustaining as an adult... ." 450 So.2d at 823 n. 1. The present case squarely presents the issue left open in Fassoulas.
The appellants assert that Brandon has a right to recover on his own behalf the special damages to age eighteen and beyond.[5] There is a division of authority among the courts to have considered this question, the majority of which have declined to recognize a cause of action on behalf of the minor child. Compare Lininger v. Eisenbaum, 764 P.2d 1202, 1209-10 (Colo. 1988) and Smith v. Cote, 128 N.H. 231, 513 A.2d 341 (1986) with Procanik v. Cillo, 97 N.J. 339, 478 A.2d 755 (1984) and Harbeson v. Parke-Davis, Inc., 98 Wash.2d 460, 656 P.2d 483 (1983).
On the facts here presented, there is a claim for the special care and maintenance expenses for a disabled child, both before and after the age of majority. In the present circumstances we conclude that the claim is that of the parents, not the child. Again viewing the record most favorably to the Lloyds, it is abundantly clear that the parents sought medical evaluation and advice specifically so that they could avoid giving birth to a second child with the defects suffered by their first child. As a result of a breach of duty owed to the parents, Brandon was born and will require a lifetime of special support, for there is no possibility that Brandon will become self-sustaining. Apart from moral obligations, there is a parental duty of support where the child continues to suffer from physical or mental deficiencies after attaining the age of majority. See Perla v. Perla, 58 So.2d 689, 690 (Fla. 1952); Shufflebarger v. Shufflebarger, 460 So.2d 982, 984 (Fla. 3d DCA 1984). The special care expenses for Brandon are logically and properly part of the parents' damage claim pursuant to Fassoulas. Under the circumstances of the present case, we affirm the trial court's order striking Brandon's claims.[6]
The summary judgment entered against Mr. and Mrs. Lloyd is reversed and the cause remanded for further proceedings consistent herewith. The order striking the claims on behalf of Brandon Lloyd is affirmed.

*990 ON MOTION FOR REHEARING, CLARIFICATION AND/OR CERTIFICATION
PER CURIAM.
The court certifies that in interpreting paragraph 95.11(4)(b), Florida Statutes (1985), it has passed on a question of great public importance. The motions for rehearing and clarification are denied.
NOTES
[1] The statute goes on to say:

An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care. In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the 4-year period, the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred.
[2] See § 95.11(4)(b), Fla. Stat. (1975); see also supra n. 1.
[3] Two of the cases relied on by Moores, 405 So.2d at 1026, involve claims solely for mental distress. In Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974), the plaintiff sued for distress after a car collided with her house. See Stewart v. Gilliam, 271 So.2d 466, 467 (Fla. 4th DCA 1972), quashed, 291 So.2d 593 (Fla. 1974). In Herlong Aviation, Inc. v. Johnson, 291 So.2d 603 (Fla. 1974), the claim was for fright suffered during an air trip. See Johnson v. Herlong Aviation, Inc., 271 So.2d 226, 227 (Fla. 2d DCA 1972), approved in part, quashed in part, 291 So.2d 603 (Fla. 1974). The third case, Pazo v. Upjohn Co., 310 So.2d 30 (Fla. 2d DCA 1975), applied the impact rule to bar recovery for mental pain and suffering where the mother had ingested a prescription drug which caused the child to be born with physical anomalies.
[4] We certify express and direct conflict with Moores v. Lucas.
[5] Appellants acknowledge that there can be but a single recovery.
[6] We do not say that circumstances could never arise under which a cause of action would be recognized for the child, but only that such circumstances are not present in this case.