616 So.2d 415 (1992)
Arthur W. KUSH, M.D., Petitioner,
v.
Brandon David LLOYD, etc., et al., Respondents.
NORTH BROWARD HOSPITAL DISTRICT, et al., Petitioners,
v.
Brandon David LLOYD, etc., et al., Respondents.
Arthur A. MAISLEN, M.D., et al., Petitioners,
v.
Brandon David LLOYD, etc., et al., Respondents.
Pedro A. DIAZ, M.D., Petitioner,
v.
Brandon David LLOYD, etc., et al., Respondents.
Nos. 76476, 77135, 77192 and 77193.
Supreme Court of Florida.
December 3, 1992.
Rehearing Denied March 4, 1993.
*416 Debra J. Snow and Robert M. Klein of Stephens, Lynn, Klein & McNicholas, P.A., Miami, on behalf of Arthur W. Kush, M.D.
Steven R. Berger of Wolpe, Leibowitz, Berger & Brotman, Miami, and Billing, Cochrane, Heath, Lyles & Mauro, Fort Lauderdale, on behalf of North Broward Hosp. Dist.
Steven E. Stark of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, on behalf of Arthur A. Maislen, M.D., et al.
Donald G. Korman of Korman, Schorr & Wagenheim, P.A., Fort Lauderdale, on behalf of Pedro A. Diaz, M.D., et al.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin and Perwin, P.A., Miami, Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, and Edna L. Caruso, P.A., West Palm Beach, for respondents.
*417 PER CURIAM.
We have for review Lloyd ex rel. Lloyd v. North Broward Hospital District, 570 So.2d 984, 990 (Fla.3d DCA 1990), which certified the following question of great public importance:[1]
In a case involving negligent failure to diagnose an inheritable genetic impairment, is the resulting cause of action for wrongful birth extinguished by the four-year statute of repose if the genetically impaired child is born more than four years after the negligent diagnosis?
The district court also certified conflict with Moores v. Lucas, 405 So.2d 1022 (Fla. 5th DCA 1981). We have jurisdiction. Art. V, § 3(b)(3), (4), Fla. Const.
In 1976, Diane Lloyd gave birth to a deformed son. Her pediatrician, Dr. Pedro Diaz, later referred her and her husband, Anthony Lloyd, for genetic testing. The physician who coordinated the testing was Dr. Arthur Maislen. After the tests were performed, Dr. Maislen advised Dr. Diaz that no genetic abnormalities had been found. However, one particular test  a fluorescent banding study  had not yet been completed. Dr. Maislen said he would contact Dr. Diaz if any abnormality was revealed by this last test. Subsequently, Dr. Maislen was replaced by Dr. Juliet Hananian. For undetermined reasons, the results of the fluorescent banding study were never transmitted to Dr. Diaz.
Based on the information given him, Dr. Diaz informed the Lloyds that their son's impairment was an accident of nature, not a genetic defect. Dr. Diaz told the Lloyds they could have another child without incident. Dr. Diaz ceased providing medical care to the Lloyds on December 31, 1978. The Lloyds later received medical care from Dr. Arthur Kush.
Subsequently, Diane Lloyd became pregnant twice, with both pregnancies ending in miscarriages. However, on December 24, 1983, she gave birth to a second son, Brandon David Lloyd, who had the same deformities as the first child. Subsequent testing at a genetics laboratory disclosed that Brandon had a genetic abnormality called 10p trisomy. The Lloyds forwarded the earlier chromosome studies of their first son to the same genetics laboratory, which determined that he also suffered from 10p trisomy. Tests disclosed the condition was inherited from the mother.
The Lloyds filed suit on December 24, 1985, against the various practitioners and entities involved. They asserted claims for wrongful birth[2] and wrongful life,[3] and sought recovery for the extraordinary expenses associated with Brandon's medical condition. They also sought damages for the mental anguish experienced by the family.
The trial court struck Brandon's entire claim and also struck the parents' claim for mental anguish. Subsequently, the trial court granted a defense motion asserting that the claims against most of the defendants *418 were barred by the statute of repose. After this action, the only pending claim was against Dr. Kush, who had rendered care and treatment to the Lloyds within four years preceding the lawsuit.
On appeal, the Third District Court of Appeal first determined that the statute of repose began to run when Brandon was born, not when the Lloyds were advised they could have more children safely. Thus, the district court concluded, the trial court should not have dismissed the claims on this basis. The district court found that any other holding would violate the right of access to courts. Lloyd, 570 So.2d at 986-87.
Second, the district court found that the parents had stated a valid claim for mental anguish because (a) mental anguish was a natural consequence of the tort of wrongful birth recoverable whether or not there was an impact, or (b) the Lloyds had suffered an "impact" in the form of two miscarriages and the birth of a deformed child. The district court certified conflict with Moores v. Lucas, 405 So.2d 1022 (Fla. 5th DCA 1981), which had reached a contrary result. Lloyd, 570 So.2d at 988-89.
Third, the district court held that Brandon's claim for general damages for wrongful life was properly stricken. Fourth, the district court determined that Brandon's claim for special damages for wrongful life actually was a claim of the parents, based on their legal duty to care for a mentally deficient child even in adulthood. Thus, the court concluded, Brandon's entire claim was properly stricken. Id. at 989-90. On rehearing, the district court certified that its interpretation of the statute of repose presented a question of great public importance. Id. at 990.

PART I. STATUTE OF REPOSE
The statute of repose at issue here provides in pertinent part:
(b) An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care.
§ 95.11(4)(b), Fla. Stat. (1985). Petitioners argue that this language means the statute runs from the date negligent advice was given, not from the date of Brandon David Lloyd's birth. We agree.
There is considerable misunderstanding of the relationship between statutes of limitation and statutes of repose. A statute of limitation begins to run upon the accrual of a cause of action except where there are provisions which defer the running of the statute in cases of fraud or where the cause of action cannot be reasonably discovered. On the other hand, a statute of repose, which is usually longer in length, runs from the date of a discrete act on the part of the defendant without regard to when the cause of action accrued. This is explained by W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 30, at 168 (5th ed. 1984), as follows:
A statute of repose generally begins to run at an earlier date and runs for a longer period of time than the otherwise applicable statute of limitations unaffected by the discovery accrual rule. Repose statutes may begin to run from the time of the defendant's act or neglect, as in the medical malpractice context, or upon the occurrence of a specific and identifiable event shortly thereafter  as from the substantial completion of the structure, in actions against architects and contractors, or from the manufacture or sale of the product, in products liability cases. Statutes of repose by their nature reimpose on some plaintiffs the hardship of having a claim extinguished before it is discovered, or perhaps before it even exists, and their constitutionality *419 has been challenged on a variety of state and federal grounds. Although some of the statutes have been declared unconstitutional, the courts in most jurisdictions have upheld their statutes and the legislatures in those that have not have sometimes reenacted new repose legislation that has withstood constitutional attack.
(Footnotes omitted.) See also 2 Steven E. Pegalis & Harvey F. Wachsman, American Law of Medical Malpractice § 6.7, at 20 (1981) ("Most states providing `discovery' accrual provisions impose a cap which in effect provides that in no event may lack of discovery extend a time limitation beyond a certain number of years from the negligent act or omission.").
The proper application of Florida's statute of repose in medical malpractice actions is illustrated in Carr v. Broward County, 505 So.2d 568 (Fla. 4th DCA 1987), approved, 541 So.2d 92 (Fla. 1989). The complaint in Carr charged that a child who was born on December 20, 1975, suffered brain damage as a result of negligent care by the hospital and attending physicians at birth. The complaint was not filed until September 26, 1985, but the plaintiffs alleged that they were unable to discover the negligence until shortly before filing suit and that in any event the defendants had fraudulently concealed the pertinent facts. The issue in the case was whether or not suit was barred by the statute of repose.
The trial court had dismissed the action. At the outset of its opinion, the Fourth District Court of Appeal stated:
Before we can define the limits within which a statute of repose permissibly operates, we need to distinguish this device from statutes of limitation in two particulars.
First, a statute of limitation bars enforcement of an accrued cause of action whereas a statute of repose not only bars an accrued cause of action, but will also prevent the accrual of a cause of action where the final element necessary for its creation occurs beyond the time period established by the statute. This effect raises certain constitutional questions which will be subsequently examined.
A second distinction may be made with reference to the event from which time is measured. A statute of limitation runs from the date the cause of action arises; that is, the date on which the final element (ordinarily, damages, but it may also be knowledge or notice) essential to the existence of a cause of action occurs. The period of time established by a statute of repose commences to run from the date of an event specified in the statute, such as delivery of goods, closing on a real estate sale or the performance of a surgical operation. At the end of the time period the cause of action ceases to exist.
Carr, 505 So.2d at 570.
The court then pointed out that statutes of repose are always subject to constitutional attack under the access to courts provision of our constitution. However, the court went on to hold that the medical malpractice statute of repose was constitutional because in its enactment the legislature had met the requirements of Kluger v. White, 281 So.2d 1 (Fla. 1973). As a consequence, the court reasoned:
Applying our analysis and preliminary conclusions to the facts of the present case, we briefly conclude. The injury to infant Carr was a completed fact on or before December 20, 1975. The statute was already in effect (January 1, 1975) when the cause of action arose. Whether the Carrs knew or should have known of the "incident" and whether the incident or its effects were fraudulently concealed, their cause of action was permanently barred in December of 1982 by the seven-year statute of repose, if that statute is validly imposed here. Unlike the products liability statute of repose, (section 95.031(2), under which, where fraud is involved, the period runs from "the date of the commission of the alleged fraud") the incident of malpractice begins the period of repose in a medical malpractice case despite fraudulent concealment. Whether public policy supports such a distinction is a matter *420 for the legislature, not this court, to determine.
Carr, 505 So.2d at 574-75.
The district court of appeal in Carr certified conflict with the decision of the Third District Court of Appeal in Phelan v. Hanft, 471 So.2d 648 (Fla.3d DCA 1985), appeal dismissed, 488 So.2d 531 (Fla. 1986). In Phelan, the court had rejected the defendant's contention that the plaintiff's malpractice action was barred by the four-year statute of repose where the plaintiff had alleged that the cause of action could not have been discovered with due diligence until after the expiration of the four years. The Third District Court of Appeal held that under these circumstances the statute of repose would unconstitutionally deny the plaintiff access to the courts.
In reviewing the Carr decision, this Court resolved the conflict between the two district courts of appeal. We held that the medical malpractice statute of repose was constitutional and that it barred the Carrs' medical malpractice action. We approved the decision of the Fourth District Court of Appeal and disapproved the decision in Phelan. Carr v. Broward County, 541 So.2d 92 (Fla. 1989).
We addressed the statute of repose once again in University of Miami v. Bogorff, 583 So.2d 1000 (Fla. 1991). This was a suit alleging medical malpractice in the treatment of a child suffering from lymphoblastic leukemia. In January of 1972, Dr. Koch administered a final injection of the drug which was said to have injured the child. It was conceded that the child's injuries occurred, at the latest, by July 1972. The lawsuit was filed in December of 1982. The plaintiffs claimed Dr. Koch had fraudulently concealed the pertinent facts, thereby tolling the statute of limitation until they discovered their cause of action in 1982. In response to this contention, we said:
Even if there were fraudulent concealment by Dr. Koch, however, we find the Bogorffs' complaint against Koch and the University of Miami barred by the repose period set forth in subsection 95.11(4)(b), Florida Statutes (1975), which states in pertinent part:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. ... In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the 4-year period, the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred.

(Emphasis added). In contrast to a statute of limitation, a statute of repose precludes a right of action after a specified time which is measured from the incident of malpractice, sale of a product, or completion of improvements, rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued. See Melendez v. Dreis & Krump Manufacturing Co., 515 So.2d 735 (Fla. 1987); Universal Engineering Corp. v. Perez, 451 So.2d 463 (Fla. 1984); Bauld v. J.A. Jones Construction Co., 357 So.2d 401 (Fla. 1978).
The Bogorffs contend that this statute cannot be applied to an incident which occurred in 1972. We disagree. When the Bogorffs' cause of action accrued in July 1972, the statute of limitation in effect at that time provided four years to file their complaint. See § 95.11(4), Fla. Stat. (1971). Hence, they could bring suit up until July 1976. After subsection 95.11(4)(b) became effective on May 20, 1975 the repose period set forth therein cut off the Bogorffs' right of action, *421 absent fraud, in January 1976  four years after the incident of malpractice, i.e., when Dr. Koch administered the final injection of intrathecal methotrexate... .
Moreover, assuming arguendo that the Bogorffs' cause of action did not accrue until, as they contend, 1982, the statute of repose would still bar their action. In Carr v. Broward County, 541 So.2d 92 (Fla. 1989), we held that the statutory repose period for medical malpractice actions does not violate the constitutional mandate of access to courts, even when applied to a cause of action which did not accrue until after the period had expired. See also Pullum v. Cincinnati, Inc., 476 So.2d 657 (Fla. 1985) (receding from Battilla v. Allis Chalmers Manufacturing Co., 392 So.2d 874 (Fla. 1980), and holding the twelve-year statute of repose in products liability actions constitutional even as applied to causes of action which did not accrue until after the period expired), appeal dismissed, 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986). Thus, under the interpretation of the facts most favorable to the Bogorffs, accrual of their cause of action in 1982 would result in their complaint being timely filed within the statute of limitation, but their suit would be barred by the statute of repose.
583 So.2d at 1003-04 (footnote omitted).
Even Justice Kogan, the author of the dissenting opinion on this point, acknowledged the operation of the statute of repose when he discussed section 95.11(4)(b) in Public Health Trust v. Menendez, 584 So.2d 567, 568 (Fla. 1991):
Thus, under this statute a two-year limitation begins on the date of actual or constructive discovery; but there also is a "repose" period that bars any and all claims brought more than four years after the actual incident, even for acts of negligence that could not reasonably have been discovered within this period of time.
Justice Kogan's opinion in the instant case correctly states that the statute of limitation did not commence to run until the child was born, because the cause of action could not have accrued until there were damages resulting from the defendant's negligence. Yet, the dissent inexplicably reasons that the statute of repose does not begin to run until the same time, i.e., when the cause of action accrued. If both the two-year statute of limitation and the four-year statute of repose each commence only when the plaintiff has actual or constructive knowledge of the alleged malpractice or the resulting injury, then there would be no occasion where the repose period would expire before the statute of limitation period. If, as the dissent now seems to say, the statute of repose begins to run when the injury occurs, regardless of the plaintiff's knowledge, the statute of repose has simply been converted into a lengthened statute of limitation without a discovery clause. This cannot be squared with Bogorff, 583 So.2d at 1003-04 ("[T]he repose period ... cut off the Bogorffs' right of action ... four years after the incident of malpractice, i.e., when Dr. Koch administered the final injection of intrathecal methotrexate.") and this Court's approval of the district court of appeal's decision in Carr, 505 So.2d at 570 ("[A] statute of repose commences to run from the date of ... the performance of a surgical operation.").
In the final analysis, the dissenting opinion seems to rest upon its reluctance to eliminate a cause of action before it has accrued. Yet, this is exactly what a statute of repose does. See Melendez v. Dreis & Krump Mfg. Co., 515 So.2d 735 (Fla. 1987) (holding that the former product liability statute of repose barred the suit before the cause of action accrued). Because its application has the potential, as in this case, of barring a cause of action before it accrues, Florida has enacted few statutes of repose. However, the medical malpractice statute of repose represents a legislative determination that there must be an outer limit beyond which medical malpractice suits may not be instituted. In creating a statute of repose which was longer than the two-year statute of limitation, the legislature attempted to balance the rights of injured persons against the exposure of *422 health care providers to liability for endless periods of time. Once we determined that the statute was constitutional, our review of its merits was complete. This Court is not authorized to second-guess the legislature's judgment.

PART II. WRONGFUL BIRTH
The next question is whether Mr. and Mrs. Lloyd can recover damages for alleged mental anguish caused by the birth of a deformed child as a result of petitioners' negligence. Although at least eighteen jurisdictions recognize wrongful birth claims of some type, Shari S. Weinman, Birth Related Torts: Can They Fit the Malpractice Mold?, 56 Mo.L.Rev. 175, 177 (1991), there is wide variation on the question of psychic damages. The cases appear to fall within two broad categories.
Some courts appear to have adopted broad guidelines allowing recovery of intangible damages for alleged emotional injuries, often on grounds that fundamental justice requires this result. E.g., Speck v. Finegold, 497 Pa. 77, 439 A.2d 110 (1981); Naccash v. Burger, 223 Va. 406, 290 S.E.2d 825 (1982). Still others apparently have attempted to limit recovery of psychic damages, typically by using some variation of an "impact doctrine" or a "zone-of-danger rule."[4]E.g., Siemieniec v. Lutheran Gen. Hosp., 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987); Howard v. Lecher, 42 N.Y.2d 109, 397 N.Y.S.2d 363, 366 N.E.2d 64 (1977). The usual rationale for this last approach is that the plaintiff must demonstrate objective physical harm by which the emotional injury can be quantified.
Our precedent in other contexts also has recognized an impact doctrine that precludes recovery where injury is occasioned by the mere observance of a traumatic event, Doyle v. Pillsbury Co., 476 So.2d 1271 (Fla. 1985), except in certain narrowly defined cases in which negligently inflicted psychic trauma in turn causes discernible physical illness. Champion v. Gray, 478 So.2d 17 (Fla. 1985).
However, we are not certain that the impact doctrine ever was intended to be applied to a tort such as wrongful birth. Prosser and Keeton state that the impact doctrine should not be applied where emotional damages are an additional "parasitic" consequence of conduct that itself is a freestanding tort apart from any emotional injury. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 361-65 (5th ed. 1984). The American Law Institute is in general accord. Restatement (Second) of Torts § 47 & § 47 cmt. b (1965). Obviously, the Lloyds have a claim for wrongful birth even if no emotional injuries had been alleged.
Similarly, the impact doctrine also generally is inapplicable to recognized torts in which damages often are predominately emotional, such as defamation or invasion of privacy. Restatement (Second) of Torts §§ 569, 570, 652H cmt. b (1977). This conclusion is entirely consistent with existing Florida law. For example, it is well settled that mental suffering constitutes recoverable damages in cases of negligent defamation, e.g., Miami Herald Publishing Co. v. Brown, 66 So.2d 679, 681 (Fla. 1953), or invasion of privacy. See Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944). Accord Restatement (Second) of Torts §§ 569, 570, 652H, cmt. b (1977). If emotional damages are ascertainable in these contexts, then they also are ascertainable here.
There can be little doubt that emotional injury is more likely to occur when negligent medical advice leads parents to give birth to a severely impaired child than if someone wrongfully calls them liars, accuses them of unchastity, or subjects them to *423 any other similar defamation. A defamation may have little effect, may not be believed, might be ignored, or could be reversed by trial publicity. But the fact of a child's serious congenital deformity may have a profound effect, cannot be ignored, and at least in this case is irreversible. Indeed, these parents went to considerable lengths to avoid the precise injury they now have suffered. We conclude that public policy requires that the impact doctrine not be applied within the context of wrongful birth claims.[5] Accordingly, in this respect the result reached by the district court is affirmed.[6]

PART III. EXTRAORDINARY COSTS AFTER MAJORITY
Another issue is whether the extraordinary costs of care and maintenance for Brandon are recoverable beyond the age of his majority. This is a question we left open in Fassoulas v. Ramey, 450 So.2d 822, 823 n. 1 (Fla. 1984). Petitioners contend that damages of this type essentially are a claim for "wrongful life"  a tort Florida has not recognized. While we agree that "wrongful life" is not a part of Florida tort law, we do not accept the remainder of this argument.
Part of the confusion stems from the fact that some jurisdictions have at least suggested that the tort of "wrongful life" can address two separate concerns: (1) the extraordinary expenses associated with caring for the impaired child until its death; and (2) liability for "suffering" caused by the impairment. Continental Casualty Co. v. Empire Casualty Co., 713 P.2d 384, 393-94 (Colo.Ct.App. 1985) (leaving question of damages for wrongful life open), affirmed in part and reversed in part sub nom. Empire Casualty Co. v. St. Paul Fire & Marine Ins. Co., 764 P.2d 1191 (Colo. 1988) (reversing appeals court's recognition of tort of wrongful life). The second category has greatly troubled almost every court and commentator addressing it.
A lawsuit aimed at recovering the second type of "damages" necessarily would require the finder of fact to weigh the value of impaired life against the value of nonexistence. This is an existential conundrum about which the wisest people in history have sharply disagreed. It leads to a string of imponderables. How do we assign a "value" to nonexistence, to nothingness? How do we offset for the relative "value" of an impaired life, especially one not yet lived? And what of those impaired children born with some capacity for enjoyment? Do we weigh each of their sorrows against each of their joys, crassly assigning a negative and positive dollar value to each?
Shakespeare's Hamlet, in asking whether to be or not to be, found no satisfactory answer to the question. Nor do we believe we can. Clearly, the relative value of human existence over human nonexistence is not a matter cognizable under Florida tort law. There is no right to remain unborn. Thus, in rejecting general damages for wrongful life, the district court reached the correct result and its decision on this issue is approved. Lloyd, 570 So.2d at 989.
The same conclusion does not hold true, however, for the extraordinary expenses that will arise from the impairment of a wrongfully born child. These expenses *424 are not properly an aspect of a wrongful life claim at all, but an aspect of wrongful birth. Such damages are quantifiable with reasonable certainty, as we recognized with regard to minor children in Fassoulas, 450 So.2d at 824. We thus find no inconsistency in extending the tort of wrongful birth to encompass all extraordinary expenses caused by the impairing condition for the duration of the child's life expectancy. Justice strongly favors such an extension, and we find no countervailing policy.
Indeed, the central policy of all tort law is to place a person in a position nearly equivalent to what would have existed had the defendants' conduct not breached a duty owed to plaintiffs, thereby causing injury. In the context of wrongful birth, this means the situation that would have existed had the child actually been born in the state of health parents were led to believe would occur. Damages are not gauged against the state of affairs that would have existed had the child never been born, because parents always assume the costs of healthy children born to them, even if unplanned.[7]Fassoulas v. Ramey, 450 So.2d 822, 823-24 (Fla. 1984). This policy can be fulfilled here only by allowing recovery of all future extraordinary expenses Brandon will incur. Accordingly, the district court correctly held that such damages are recoverable, and to this extent its opinion is approved. See Lloyd, 570 So.2d at 989.
The next subissue is whether the district court properly held that these damages were a part of the parents' claim and could not be recovered by Brandon in his own right. We agree with the result reached by the district court, but not its entire analysis. The parents are guardians of the child's person, property, and best interests unless and until a court lawfully terminates that relationship, and the parents or other lawful guardian necessarily must be entrusted with any funds to pay for Brandon's care.
We do not agree that the claim for extraordinary damages is dependent on any future parental duty owed Brandon after he reaches majority, as the district court apparently concluded. To the contrary, the claim is being asserted by parents in their present roles as guardians of the best interests of an impaired child. Those best interests manifestly include a present-day responsibility to assert all legal claims that may provide for the future extraordinary care of the impaired child, both during minority and thereafter. The claims essentially are derivative.
As a result, any such damages recovered are for the benefit of Brandon David Lloyd, because they arise from the extraordinary expenses of caring for him during his minority and beyond. Thus, the trial court should take all necessary measures to ensure that any such amount is properly identified, segregated, and placed in trust for the benefit of Brandon David Lloyd. The parents, as natural guardians of the child, are presumed to be most fit to serve as trustees absent a sufficient showing to the contrary. Moreover, this procedure will ensure that the funds can be properly administered under the law of fiduciaries if, for whatever reason, the parents no longer are available to administer the trust at some point in time.

CONCLUSION
We answer the certified question in the affirmative. The opinion under review is quashed to the extent it conflicts with the views expressed above, but otherwise is approved. This cause is remanded for further proceedings consistent with the views expressed above.
It is so ordered.
OVERTON, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., concurs as to PART II and PART III and dissents as to PART I with an opinion, in which SHAW, J., concurs.
*425 McDONALD, J., concurs as to PART I, concurs specially as to PART III, and dissents as to PART II with an opinion.
KOGAN, J., concurs as to PART II and PART III and dissents as to PART I with an opinion, in which BARKETT, C.J., concurs.
BARKETT, Chief Justice, concurring in part, dissenting in part.
I write separately to clarify my position with respect to the various issues resolved by the majority opinion.
I fully agree with the majority's conclusion in Part II that emotional distress damages are recoverable in a wrongful birth claim. I also agree with the majority's conclusion in Part III that the parents are entitled to recover damages for all the extraordinary expenses of care and maintenance for the totality of the child's life.
I disagree with the majority's conclusion, however, that the statute of repose bars the Lloyd's cause of action. I concur with Justice Kogan's cogent analysis that the statute of repose in this case did not begin to run until the day Brandon was born. Any other conclusion would violate the access-to-courts provision of the Florida Constitution by cutting off a plaintiff's right to seek legal redress before the cause of action ever existed. See Carr v. Broward County, 541 So.2d 92, 96 (Fla. 1989) (Kogan, J., dissenting); see also Barron v. Shapiro, 565 So.2d 1319, 1322 (Fla. 1990) (Shaw, J., dissenting). Accordingly, I dissent from Part I of the majority opinion.
SHAW, J., concurs.
McDONALD, Justice, concurring in part, dissenting in part.
I concur fully with part I of the opinion which holds that the statute of repose forecloses any action against Dr. Diaz. I dissent on the damages recoverable in a wrongful birth case. I would limit such damages to the actual economic loss incurred by the parents of a deformed child and disallow intangible damages for mental anguish resulting from the birth of such a child.
Except where intentional torts are involved, and except where authorized by statute in wrongful death cases, this Court has heretofore steadfastly adhered to the doctrine that emotional pain and suffering damages are not recoverable unless attendant to and part of physical trauma. We made one narrow exception to this in Champion v. Gray, 478 So.2d 17 (Fla. 1985), where a mother was injured (her death ensued) from seeing her child injured. To recover under the Champion doctrine we decreed that a physical injury must manifest itself from the psychic trauma and the party must have a sensory perception of the incident causing the injury to a close family member. In Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla. 1985), we, adhering to the impact doctrine, rejected a claim of psychic damages because the Champion criteria were not met. This case goes much further than Champion and allows grief damage even when that grief does not cause a physical injury. It will send a shiver through the medical community and those seeking medical care. I believe it will seriously impede the giving of advice in family planning issues because of the potential exposure of unreasonable damages.
I suggest that the legislature look at this and determine whether it agrees with the majority's holding. If it does not, then it should enact corrective legislation.
Should the deformed child remain incompetent and subject to guardianship proceedings, I would agree with part III of the opinion. If, on the other hand, that person is legally competent upon reaching his or her majority then damages for extra medical care should not be allowed.
KOGAN, Justice, concurring in part, dissenting in part.
I concur in parts II and III but dissent from Part I. A repose period runs from whatever point in time the statute itself specifies, not from some point arbitrarily selected by a court. The majority itself concedes as much. Majority op. at 419 (quoting Carr v. Broward County, 505 So.2d 568, 570 (Fla. 4th DCA 1987), approved, *426 541 So.2d 92 (Fla. 1989)). Admittedly, the present statute is not a model of clarity on this point, because it merely specifies that both the statute of limitation and the statute of repose are measured "from ... the incident."[8] § 95.11(4)(b), Fla. Stat. (1985). Thus, the entire case hinges on the meaning of the undefined term "incident."
Our prior cases on this question have been muddled. In particular, they have failed to adequately focus on a critical distinction in cases of this type  the distinction between delayed discovery and delayed injury.[9] The statutory language clearly was designed to address delayed discovery. Under the statute, the cause of action is barred if discovery does not occur within four years "from ... the incident."[10]Id. But the same statutory language simply does not address the problem of delayed injury. Indeed, it would seem very unreasonable to suggest, as the majority does, that a person is under an obligation to discover what does not yet exist.
On this question, the majority cites no relevant authority other than a single highly unpersuasive sentence in University of Miami v. Bogorff, 583 So.2d 1000 (Fla. 1991).[11] In Bogorff, a child received an injection that resulted in an injury some six months later. No lawsuit was filed until more than ten years had passed. This Court in a single unsupported sentence stated that the statute of repose barred the cause of action four years after the date the injection was administered, id. at 1003-04, even though no injury occurred until six months later. This statement was unnecessary to decide the case, since the cause of action clearly was barred under any construction of the statute.
I am not convinced the legislature intended the statute to be applied as suggested in Bogorff, and I dissented in Bogorff partly for that reason. The word "incident" is simply too vague to say that, in delayed injury cases, the legislature wanted to gauge the repose period from the date of the last medical consultation. "Incident" just as reasonably can mean the date the injury occurs, whether or not the injury is discovered on that date.
Our law is settled that any reasonable doubt about the meaning of a statute limiting the time in which an action may be brought should be resolved in favor of allowing the longer period of time. Baskerville-Donovan Engineers, Inc. v. Pensacola Executive House Condominium Ass'n, 581 So.2d 1301, 1303 (Fla. 1991). Because this is so, I find the majority's one-sided analysis and the throwaway statement in Bogorff singularly unpersuasive. There are two reasonable constructions here, and we are required to adopt the one that preserves the cause of action.
This is nothing contrary to law, reason, or policy; and I would note that delayed injury cases will be rather rare. It just so happens that, by their peculiar nature, wrongful birth suits almost always will involve a delayed injury. Obviously, there is no injury relevant to a wrongful birth claim if the child is never conceived, is aborted, or is miscarried. Only at birth does the injury itself occur, because only then can *427 there be a "wrongful birth." In the overwhelming majority of other cases, delayed injury seldom will happen, although delayed discovery certainly is common in medical malpractice cases.[12]
A few other points deserve mention. The majority suggests at one point that I am attempting to engraft the discovery rule onto the alien soil of statutes of repose, and then in the very next sentence says I am attempting to convert statutes of repose into lengthened statutes of limitation without discovery clauses. Majority op. at 421. I am attempting neither, and I would note in any event that the majority cannot have it both ways.
Here, discovery and injury coincidentally occurred at the same time  when the infant was born obviously deformed. This coincidence will not always recur even in wrongful birth claims. Suppose, for example, the child here had been born with a latent genetic defect and the parents then had failed to discover the impairment until four years had elapsed from birth. In such a case, the statute of repose would have extinguished this cause of action on the child's fourth birthday even though the statute of limitation still would not have expired because of the discovery rule. Thus, the majority is in error when it suggests that, under my analysis, "there would be no occasion where the repose period would expire before the statute of limitation period." Majority op. at 421.
Finally, there are two issues raised by petitioners that deserve discussion. Petitioners request that special instructions be given to the jury to offset the following against any recovery: (1) benefits received by the parents as a result of Brandon's comfort and society, minus any emotional pain and suffering the parents may feel; and (2) extraordinary costs of Brandon's care after the probable date of his parents' deaths.
The first requested jury instruction rests on section 920 of the Restatement (Second) of Torts (1979), which states:
When the defendant's tortious conduct has caused harm to the plaintiff or his property and in so doing has conferred a special benefit to the interest of the plaintiff that is harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.
(Emphasis added). This provision  sometimes called the "benefits rule"  essentially embodies earlier common law principles regarding the set-off of special benefits against liabilities in a tort action. Other states have applied the benefits rule in the context of wrongful birth claims. E.g., Eisbrenner v. Stanley, 106 Mich. App. 357, 308 N.W.2d 209 (1981).
However, I am not persuaded the benefits rule is applicable in every wrongful birth, although there may be some cases where it would apply. I find that, under the facts presented to us by the parties, the wrongful birth of Brandon did not confer "a special benefit" upon the parents.
It is clear both from section 920 and its accompanying comments that a "special benefit" is one that improves the status quo in some significant way. The Restatement notes, for example, that set-off would be required where a physician performs nonconsensual surgery that blinds a patient in one eye but saves the vision of the remaining eye. The present situation is more analogous to a situation in which the same physician blinds one eye but leaves the other healthy eye unharmed. There is no "special benefit."
Here, the parents were attempting to have a healthy child. Had all gone well, Brandon would be a normal boy, with all the usual benefits parents might enjoy. Apart from Brandon's impairments, I see no "special benefit" in the simple fact that he was born and may become an object of love and affection for his parents.[13] These *428 factors also would have been present had Brandon been born unimpaired. As noted by the majority, a claim of wrongful birth is not judged by comparing the present situation with the state of affairs that would have existed if the child had not been born. The proper comparison is with what would have existed had the child been born in the state of health that petitioners were led to believe the child would have.
I also would reject the second requested jury instruction. Petitioners premise this last request on the district court's reasoning that extraordinary damages are owed the parents because of their future duty to care for an impaired child after the age of majority.[14]Lloyd, 570 So.2d at 989. Thus, under this somewhat unusual logic, any such obligation would cease when the parents both are dead. As noted by the majority, however, the parent's claim for Brandon's future extraordinary expenses is derivative, arising from their present duties as guardians of the child's best interests. Their future duties to Brandon, while significant, are not the actual basis for recovery in the proceedings below. Accordingly, the probable dates of the parents' deaths are irrelevant in determining damages.
BARKETT, C.J., concurs.
NOTES
[1] We phrase the question ourselves, since the district court chose not to do so.
[2] "Wrongful birth" is that species of medical malpractice in which parents give birth to an impaired or deformed child and allege that negligent treatment or advice deprived them of the opportunity or knowledge to avoid conception or to terminate the pregnancy. See Black's Law Dictionary 1612 (6th ed. 1990). The primary object of a wrongful birth claim is to recover damages for the extraordinary expense of caring for the impaired or deformed child, over and above routine rearing expenses. Fassoulas v. Ramey, 450 So.2d 822 (Fla. 1984). Other jurisdictions have distinguished "wrongful birth" from two other somewhat similar torts, "wrongful conception" and "wrongful pregnancy." Under these out-of-state theories, wrongful conception is a claim brought by parents against a physician, a manufacturer of contraceptives, or other related professionals for injuries caused when a negligently performed sterilization or contraception procedure results in pregnancy. "Wrongful pregnancy" is a similar claim for a birth resulting despite a negligently performed abortion procedure. James Bopp, Jr., et al., The "Rights" and "Wrongs" of Wrongful Birth and Wrongful Life: A Jurisprudential Analysis of Birth Related Torts, 27 Duquesne L.Rev. 461, 464-65 (1989).
[3] "Wrongful life" is that species of medical malpractice in which a cause of action is brought on behalf of a child born with birth defects, where the birth allegedly would not have occurred but for negligent medical advice to or treatment of the parents. Black's Law Dictionary 1613 (6th ed. 1990). For reasons expressed below, the tort does not exist in Florida.
[4] The impact doctrine as originally conceived in the common law forbade recovery for psychic damages in the absence of some direct physical impact caused by defendants' negligence. The zone-of-danger rule as conceived in some other jurisdictions allows recovery by bystanders who witness a traumatic event provided they were in the zone of danger, were at high risk of an impact, and developed a physical injury as a result of the psychic trauma. E.g., Siemieniec v. Lutheran Gen. Hosp., 117 Ill.Dec. 230, 111 Ill. Dec. 302, 512 N.E.2d 691 (1987). As discussed below, Florida now observes an impact doctrine that, with some modifications, is a hybrid of both of these approaches.
[5] As Justice Alderman noted in his concurring opinion in Champion v. Gray, 478 So.2d 17 (Fla. 1985):

We today modify to a limited extent our previous holdings on the impact doctrine. In doing so, however, we are unable to establish a rigid hard and fast rule that would set the parameters for recovery for psychic trauma in every case that may arise. The outer limits of this cause of action will be established by the courts of this state in the traditional manner of the common law on a case-by-case basis.
Id. at 21-22 (Alderman, J., concurring specially). We agree that, at a minimum, the present case falls within the "outer limits" noted by Justice Alderman. The essence of the impact rule remains intact because here the tort was committed directly against the mother and the father.
[6] To the extent of inconsistency with our views today, the opinion in Moores v. Lucas, 405 So.2d 1022, 1026 (Fla. 5th DCA 1981), is disapproved. We need not, and therefore do not, reach the district court's alternative argument that an impact actually occurred here.
[7] Any holding to the contrary also would imply that the purpose of wrongful birth is to fashion an award of money that symbolically will "take back" the child's life. This macabre suggestion cannot be accepted.
[8] Thus, it is hardly "inexplicable" to say that both are measured from the same point, as the majority states. Majority op. at 421. This is precisely what the statute says.
[9] "Delayed discovery" simply means that an injury already has occurred but has not been discovered, as exemplified in Carr v. Broward County, 505 So.2d 568 (Fla. 4th DCA 1987) (involving injury occurring at birth but not discovered until later), approved, 541 So.2d 92 (Fla. 1989). "Delayed injury" means that injury has not yet occurred, even though an agency has been set in motion that will cause an injury at some remove. In University of Miami v. Bogorff, 583 So.2d 1000 (Fla. 1991), we confronted a case that partially involved delayed injury: an injection that resulted in injury some six months later. Because the present case involves delayed injury, not delayed discovery, I find the majority's discussion of Carr unpersuasive.
[10] This period is increased to seven years in cases of fraud, concealment, or intentional misrepresentations of fact. § 95.11(4)(b), Fla. Stat. (1985).
[11] None of the other cases contain discussion relevant to delayed injury. As noted above, the majority's reliance on Carr is misplaced, because Carr was not a case of delayed injury but of delayed discovery.
[12] In fact, I question whether Bogorff actually involved delayed injury. Depending on the factual record, the injection of a harmful substance into the body may well constitute an injury in itself.
[13] Of course, I do not imply that Brandon's life has no value to the Lloyds. I simply believe that the value that does exist is usual, not special, within the meaning of the benefits rule.
[14] Such a duty is recognized in this state. Perla v. Perla, 58 So.2d 689, 690 (Fla. 1952).