COBB, Judge.
The issue on this appeal is whether final summary judgment in favor of a health care provider was in error.
The events leading up to this appeal establish that Christine Cardenas, who was pregnant at the time, entered the hospital on August 1, 1987 complaining of cramps and spotting. Her due date was approximately September 16, 1987. Dr. Godbold was contacted by the emergency room and delivered Victoria Cardenas six weeks premature. Apparently, there was no discussion about continuing the pregnancy through tocolytic therapy, which could involve use of the drug ritodine along with bed rest. Betamethazone and hydrocortisone also have been utilized at times to accelerate maturation of the fetal lungs prior to delivery.
Victoria subsequently developed respiratory problems and her hospitalization was extended from August 1st to August 13, 1987, at which time she was allowed to go home. On September 9, 1987, Christine took Victoria to a health clinic where she was told Victoria was experiencing periods of apnea, which relates to the cessation of breathing. Victoria was then admitted to Florida Hospital. Christine was advised that the child’s condition was probably caused by a virus and by October 7, 1987, Christine learned that Victoria was suffering from meningitis and encephalitis with permanent brain damage and related seizures caused by the herpes virus. At the time of discharge on October 7, Victoria was blind and receiving respiratory assistance plus drugs for the seizures.
On May 7, 1989, Christine gave birth to a fourth child after undergoing tocolytic therapy to prevent a premature birth. During July of 1990, Christine, according to her testimony, was watching an attorney’s television ad that concerned wrongful death and she began to question at that time whether Victoria’s condition might have resulted from the circumstances of the premature birth. Later, a social worker advised Christine to seek assistance from an attorney. She did so on May 14, 1991, and the attorney filed a ninety day extension of the statute of limitations. Notice was given on July 17, 1991, and the suit commenced on December 12, 1991, on behalf of the minor daughter and Christine individually.
The medical negligence asserted was the elective decision made by Dr. Godbold to deliver Victoria Cardenas prematurely without consulting Christine Cardenas or giving her the option to continue the pregnancy. It was contended that the premature birth made Victoria more susceptible to viral infections. The mother and child now appeal from a summary judgment entered in Godbold’s favor based on the statute of limitations. See § 95.11(4)(b), Fla.Stat. (1991).
The appellants maintain that there is a jury question as to when Christine knew or was on notice of an invasion of her legal *100 rights regarding possible medical malpractice. The question is, when did the two year limitations period in section 95.11(4)(b) commence to run. Additionally, Christine claims it was not until July, 1990, that she first considered the possibility of medical negligence and that “it was in April, 1991, when Christine Cardenas learned that Dr. Godbold could have prolonged her pregnancy and that his decision to effect delivery prematurely [sic] resulted in damage to her baby.”
Section 95.11(4)(b) reads in pertinent part: An action for medical malpractice shall be commenced within two years from the time the incident giving rise to the action occurred or within two years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than four years from the date of the incident or occurrence out of which the cause of action accrued.
In Tanner v. Hartog, 618 So.2d 177 (Fla. 1993), the Florida Supreme Court modified its previous opinion in Nardone v. Reynolds, 333 So.2d 25 (Fla.1976) which had held that a statute of limitations in a malpractice suit commenced either when a plaintiff had notice of the negligent act giving rise to the cause of action or when a plaintiff had notice of the physical injury which was the consequence of the negligent act. The Tanner opinion discerned that the Nardone rule, when strictly applied, could produce unjust and unreasonable results, particularly in those cases in which the adverse medical consequence is one which often occurs as a result of natural causes rather than from medical negligence. The court held:
As a consequence, we have determined to place an interpretation on the Nardone rule designed to ameliorate the harsh results which can sometimes occur by its strict application. We hold that the knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility[4] that the injury was caused by medical malpractice. The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself. On the other hand, if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred.
The court recognized that its holding would often require a fact-finder- to determine when the two year statute begins to run, but considered its departure from the Nardone rule as justified by the definitive outer time limit of four years based upon the statute of repose as explicated in Kush v. Lloyd, 616 So.2d 416 (Fla.1992).
The type of damage suffered by Victoria Cardenas — i.e., viral attack and resulting brain damage — is such as may readily occur in the absence of medical malpractice. We believe in this ease, as in Tanner, the point at which the statute began to run can only be determined after all of the pertinent facts have been developed. One such disputed fact is the extent of Christine Cardenas’ knowledge of the nature and availability of tocolytic therapy, and when that knowledge was acquired. It must also be remembered that she was told by treating physicians that her baby’s brain damage was the result of natural causes, i.e., the contraction of meningitis and encephalitis and a herpes virus. The appellee relies heavily upon the testimony of one Evelyn Carr, but that testimony is controverted in material respects by the sworn testimony of Christine Cardenas, thereby negating its effectiveness for purposes of a summary judgment. Moreover, the testimony of Carr is self-contradictory and confusing in many instances.
REVERSED and REMANDED for further proceedings consistent with this opinion.
HARRIS, C.J., and DAUKSCH, J., concur.

 We decline the suggestion that the statute should not begin to run until there is notice of a "probability” of medical malpractice. To do so would made the reference to "knowledge of the negligent act” in the Nardone rule redundant and would result in an inordinate extension of the statute.