613 So.2d 110 (1993)
Sally WHIGHAM and Frank C. Whigham, as Personal Representatives of the Estate of Thomas E. Whigham, Appellants,
v.
SHANDS TEACHING HOSPITAL AND CLINICS, INC.; Florida Board of Regents, as an Agency of the State of Florida; and Civitan Regional Blood Center, Inc., Appellees.
No. 91-01934.
District Court of Appeal of Florida, First District.
January 27, 1993.
*111 Roy B. Dalton, Jr. of Martinez & Dalton, P.A., and Marcia K. Lippincott of Marcia K. Lippincott, P.A., Orlando, for appellants.
Francis E. Pierce, III, of Gurney & Handley, P.A., Orlando, for appellee Shands Teaching Hosp. and Clinics, Inc.
Thomas J. Guilday and Pamela K. Frazier of Huey, Guilday, Kuersteiner & Tucker, P.A., Tallahassee, for appellee Civitan Regional Blood Center, Inc., and amicus curiae Florida Ass'n of Blood Banks, Inc.
BOOTH, Judge.
This cause is before us on appeal from a judgment entered on an order dismissing appellants' suit as barred by section 95.11(4)(b), Florida Statutes (1989). Appellants contend that: (1) the trial court erred in interpreting the statute to bar appellants' action and that, as interpreted, the statute is unconstitutional; (2) Civitan Regional Blood Center (Civitan) is not a "health care provider" covered under Section 95.11(4)(b); and (3) the trial court erred in denying discovery of the unidentified blood donor.
The facts, as taken in the light most favorable to appellants, the nonmoving parties, are that, Thomas Whigham, Sally Whigham's husband, received four units of whole blood via transfusion administered by appellee Shands and provided by appellee Civitan Regional Blood Center, Inc. (Civitan). The blood was tainted with the HTLV III virus (commonly called the HIV or AIDS virus). More than four years later, in July of 1987, routine blood screening revealed that Whigham had been infected with the AIDS virus. Mr. Whigham was completely asymptomatic until several months after July 1987. He died on October 18, 1988, as a result of the infection.
The trial court dismissed the action against both Shands Teaching Hospital and Clinics, Inc. (Shands) and Civitan, holding that it was barred by section 95.11(4)(b), Florida Statutes (1989), which states in pertinent part:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. [emphasis added]
Statutes of repose, acts that "promote a policy of finality in legal relationships," are the subject of legal writing and debate reaching "high levels of abstraction."[1] As *112 stated by McGovern in his study on statutes of repose:[2]
Opponents of statutes of repose ask, "Can and should a legislature abolish a cause of action before it accrues?" Proponents ask, "Can and should a court deny the legislature its power to define the scope of compensable harm?" At issue is the appropriate balance between a state constitution and the federal Constitution, the role of the legislature to represent the popular will, and the duty of the court to preserve rights without encroaching upon legislative prerogatives.
The great majority of states have enacted statutes of repose, and most of these statutes have been held constitutional.[3]
Florida's statute of repose, applicable here, was "triggered" by the incident occurring in 1983, that incident being Whigham's receipt of AIDS-tainted blood. Knowledge of the injury or negligence is not a factor affecting the running of the four-year period of repose. Kush v. Lloyd, 616 So.2d 415 (Fla. 1992) (statute of repose runs from the date of a discrete action on the part of a defendant without regard to when the cause of action accrued). Thus, the four-year statute of repose, as distinguished from the two-year statute of limitation provided in section 95.11(4)(b), commences with the date of the actual incident of malpractice without regard to knowledge of injury or negligence.[4]
The question presented, then, is whether section 95.11(4)(b), when construed as a true statute of repose, restricts access to courts in violation of article I, section 21 of the Florida Constitution, because appellants were unaware of any injury or negligence resulting from the transfusion until after the four-year statutory period had run.
The Florida Supreme Court in University of Miami v. Bogorff, 583 So.2d 1000, 1003-1004 (Fla. 1991), ruled that section 95.11(4)(b), the statute here in question, did not violate article I, section 21, of the Florida Constitution, holding:
[A] statute of repose precludes a right of action after a specified time which is measured from the incident of malpractice, sale of a product, or completion of improvements, rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued.
... .
... In Carr v. Broward County, 541 So.2d 92 (Fla. 1989), we held that the statutory repose period for medical malpractice actions does not violate the constitutional mandate of access to courts, even when applied to a cause of action which did not accrue until after the period had expired.
In Public Health Trust v. Menendez, 584 So.2d 567, 568 (Fla. 1991), the Florida Supreme Court stated that the repose period "bars any and all claims brought more than four years after the actual incident, even for acts of negligence that could not reasonably have been discovered within this period of time."[5] (emphasis added). Recently, in Kush, the Florida Supreme Court reaffirmed its holding that the medical malpractice statute of repose *113 does not violate the constitutional mandate of access to courts even for actions which have not accrued until after the repose period has expired. Therefore, we must affirm the dismissal with regard to Shands. However, in Silva v. Southwest Florida Blood Bank, 601 So.2d 1184 (Fla. 1992), the Florida Supreme Court held that the medical malpractice statute of repose does not apply to blood banks, as they do not render diagnosis, treatment, or care, and are not providers of health care. Therefore, the final order must be reversed with regard to Civitan, a blood bank.
We note that in Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981), a products liability action, the Florida Supreme Court held section 95.031(2), Florida Statutes (1977), unconstitutional as applied to bar a suit for injuries to a child resulting from a prenatal drug administered to the child's mother. In light, however, of more recent pronouncements from the Supreme Court,[6] we find the Diamond case is not controlling in the instant medical malpractice action.
Finally, appellants contend that the trial court erred in denying a discovery motion to compel disclosure of the identity of the blood donor. In Rasmussen v. South Florida Blood Service, 500 So.2d 533 (Fla. 1987), the Supreme Court ruled that an AIDS victim is not entitled to the names and addresses of blood donors in order to assist in determining the source of the disease, holding:
In deciding whether a protective order is appropriate in a particular case, the court must balance the competing interests that would be served by granting discovery or by denying it... .
... .
... Disclosure of donor identities in any context involving AIDS could be extremely disruptive and even devastating to the individual donor... .
Our analysis of the interests to be served by denying discovery does not end with the effects of disclosure on the private lives of the fifty-one donors implicated in this case. Society has a vital interest in maintaining a strong volunteer blood supply, a task that has become more difficult with the emergence of AIDS. The donor population has been reduced by the necessary exclusion of potential blood donors through AIDS screening and testing procedures as well as by the unnecessary reduction in the donor population as a result of the widespread fear that donation itself can transmit the disease. In light of this, it is clearly "in the public interest to discourage any serious disincentive to volunteer blood donation." [South Florida Blood Service, Inc. v.] Rasmussen, 467 So.2d 798 at 804 [Fla.App. 1985]. Because there is little doubt that the prospect of inquiry into one's private life and potential association with AIDS will deter blood donation, we conclude that society's interest in a strong and healthy blood supply will be furthered by the denial of discovery in this case.
In the instant case, the trial court has considered and weighed the factors delineated *114 in Rasmussen. However, because we must remand the case with regard to Civitan, we also reverse and remand the discovery order for reconsideration in light of the Silva decision.[7] Furthermore, we certify the following question as one of great public importance:
Does Rasmussen v. South Florida Blood Service, 500 So.2d 533 (Fla. 1987), bar all discovery of the identity of blood donors, or may a party in a suit against a blood bank for receipt of AIDS-infected blood show a compelling need which would override the privacy interest of the donor and society's interest in a strong and healthy blood supply?
Accordingly, the judgment below is affirmed in part, reversed in part, and remanded for proceedings consistent herewith.
KAHN, J., concurs.
WOLF, J., specially concurs with written opinion.
WOLF, Judge, specially concurring.
I concur only because I believe that the holdings and the legal reasoning as stated in Carr v. Broward County, 541 So.2d 92 (Fla. 1989), as specifically interpreted by University of Miami v. Bogorff, 583 So.2d 1000, 1003-1004 (Fla. 1991), and Kush v. Lloyd, 616 So.2d 415 (Fla. 1992), require such a result. Notwithstanding the overwhelming public policy identified in Carr and Kush, supra, it is difficult for me to understand how a statute which extinguishes a common law right of action prior to the accrual of such action cannot be repugnant to the right of access to courts guaranteed by article I, section 21 of the Constitution of the State of Florida.
NOTES
[1] Francis E. McGovern, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am.U.L.Rev. 579, 581 (1980-81); see, e.g., 1 Stuart M. Speiser, Charles F. Krause, & Alfred W. Gans, The American Law of Torts § 5:25 (1983); Kathleen M. O'Connor, The Product Liability Statute of Repose: A Case of Premature Burial, The Florida Bar Journal, April 1992, at 9.
[2] Francis E. McGovern, Id. at 581.
[3] W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 30, at 168.
[4] The general rule is stated in Corpus Juris Secundum as follows:

A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues. A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, [the] period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.
54 C.J.S. Limitations of Actions § 4 (1987).
[5] The precise issue decided in Menendez was whether the period of limitation in Section 768.28(11) should prevail over that contained in Section 95.11(4)(b), for a medical malpractice action against governmental hospitals. The language of the Supreme Court quoted above, however, is appropriately considered as bearing on the issue here.
[6] Kush v. Lloyd, 616 So.2d 415 (Fla. 1992); but see Pullum v. Cincinnati, Inc., 476 So.2d 657, 659 (Fla. 1985), wherein the Supreme Court upheld the product liability statute of repose with a footnote reference to Diamond as follows:

Pullum also refers to Diamond v. E.R. Squibb and Sons, Inc., 397 So.2d 671 (Fla. 1981), as being in accord with Battilla [v. Allis Chalmers Manufacturing Co., 392 So.2d 874 (Fla. 1980)]. In Diamond, we held that the operation of section 95.031(2) operated to bar a cause of action before it accrued and thereby denied the aggrieved plaintiff access to the courts. But Diamond presents an entirely different factual context than existed in either Battilla or the present case where the product first inflicted injury many years after its sale. In Diamond, the defective product, a drug known as diethylstilbestrol produced by Squibb, was ingested during plaintiff mother's pregnancy shortly after purchase of the drug between 1955-1956. The drug's effects however, did not become manifest until after plaintiff daughter reached puberty. Under these circumstances, if the statute applied, plaintiffs' claim would have been barred even though the injury caused by the product did not become evident until over twelve years after the product had been ingested. The legislature, no doubt, did not contemplate the application of this statute to the facts in Diamond. Were it applicable, there certainly would have been a denial of access to the courts.
[7] The issue of whether a blood donor's identity is discoverable has been reached by several courts. For an analysis of the different results, see Snyder v. Mekhjian, 125 N.J. 328, 593 A.2d 318, 319-20 (1991), wherein the court stated:

In the absence of legislative guidance, courts in other states have divided over the rights of an AIDS-infected blood recipient to make discovery of the donor. Some courts have denied access to the donor because of the donor's privacy interests, see Bradway v. American Nat'l Red Cross, 132 F.R.D. 78 (N.D.Ga. 1990); society's interest in an adequate blood supply, see Coleman v. American Red Cross, 130 F.R.D. 360 (E.D.Mich. 1990); Taylor v. West Penn Hosp. Central Blood Bank, 48 Pa. D. & C.3d 178 (Common Pleas 1987); the physician-patient privilege, see Krygier v. Airweld, 137 Misc.2d 306, 520 N.Y.S.2d 475 (Sup.Ct. 1987); or a combination of these factors, see Doe v. American Red Cross, 125 F.R.D. 646 (D.S.C. 1989); Rasmussen v. South Fla. Blood Serv., 500 So.2d 533 (Fla. 1987); Laburre v. East Jefferson Gen. Hosp., 555 So.2d 1381 (La. 1990). Other courts, however, have found support for limited discovery of a donor in the public policy favoring compensation of injured parties, the plaintiff's correlative interest in full discovery, and society's interest in a safe blood supply. See Boutte v. Blood Sys., Inc., 127 F.R.D. 122 (W.D.La. 1989); Mason v. Regional Medical Center of Hopkins County, 121 F.R.D. 300 (W.D.Ky. 1988); Belle Bonfils Memorial Blood Center v. District Court, 763 P.2d 1003 (Colo. 1988); Stenger v. Lehigh Valley Hosp. Center, 386 Pa.Super. 574, 563 A.2d 531 (1989), appeal granted, 525 Pa. 618-20, 577 A.2d 890-91 (1990); Gulf Coast Regional Blood Center v. Houston, 745 S.W.2d 557 (Tex. Ct. App. 1988), Tarrant County Hosp. Dist. v. Hughes, 734 S.W.2d 675 (Tex. Ct. App. 1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988).
Commentators also have divided on the issue. Some favor disclosure. They argue that discovery need not excessively threaten the donor's privacy interest, Turkington, Confidentiality Policy for HIV-Related Information: An Analytical Framework for Sorting Out Hard and Easy Cases, 34 Vill.L.Rev. 871 (1989); Note, Aids Related Litigation: The Competing Interests Surrounding Discovery of Blood Donors' Identity, 19 Ind.L.Rev. 561 (1986), and that limited disclosure of the donor's identity does not jeopardize the nation's blood supply, Jenner, Identifying HIV-infected Blood Donors, 25 Trial 47 (June 1989). Others oppose disclosure of the donor's identity. They contend that such disclosure will deter potential donors from giving blood, thereby reducing the blood supply. E.g., Note, AIDS: Anonymity In Donation Situations  Where Public Benefit Meets Private Good, 69 B.U.L.Rev. 187 (1989). Still others argue that the donor's privacy interest, the physician-patient privilege, and the needs of the nation's blood supply weigh against discovery. Bollow & Lapp, Protecting the Confidentiality of Blood Donors' Identities in Aids Litigation, 37 Drake L.Rev. 343 (1987-88).