614 So.2d 1170 (1993)
John DOE, and his wife, Jane Doe, individually, and as parents, next friends, and natural guardians of their child, Mary Doe, a minor, Appellant,
v.
SHANDS TEACHING HOSPITAL AND CLINICS, INC., a Florida not-for-profit corporation, Appellee.
No. 91-3099.
District Court of Appeal of Florida, First District.
February 19, 1993.
Rehearing Denied March 31, 1993.
Loren E. Levy, Tallahassee, Carol Falvey of Cone, Green & Kaster, Ocala, for appellant.
Francis E. Pierce, III, of Gurney & Handley, Orlando, for appellee.
KAHN, Judge.
In this medical malpractice action we must reject appellant's contention that section 95.11(4)(b), Florida Statutes (1983), the medical malpractice statute of repose, is an unconstitutional denial of access to courts because appellants neither knew nor could have reasonably known of an injury before the expiration of the repose period. Kush v. Lloyd, 616 So.2d 415 (Fla. 1992); Whigham v. Shands Teaching Hospital & Clinics, Inc., 613 So.2d 110 (Fla. 1st DCA 1993); Padgett v. Shands Teaching Hospital & Clinics, Inc., 616 So.2d 467 (Fla. 1st DCA 1993).
In addition to the matters discussed by the supreme court in Kush, supra, we have closely considered the applicability of the case of Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981). In Diamond, the supreme court held unconstitutional the product liability statute of repose as applied to facts showing that from July 27, 1955 until April 1, 1956, Nina Diamond, while yet unborn, received a drug known as diethylstilbestrol (DES) by way of administration orally to her pregnant mother. The Diamonds brought a product liability action in April 1977, alleging that they first learned in May 1976 that teenage girls *1171 whose mothers had taken DES during pregnancy were developing cancerous or precancerous conditions. The court concluded that the product liability statute of repose denied access to courts because it barred the Diamonds' cause of action "before it ever existed." Id. at 672. The supreme court did not expressly confront Diamond in its Kush decision.
The statute of repose which would have barred the cause of action in Diamond, but for its unconstitutionality, became effective on January 1, 1975. Ch. 74-382, Laws of Fla. Mrs. Diamond's ingestion of DES took place almost two decades prior to enactment of the statute, and caused cancer in her child only after the child reached her teenage years. Thus, in Diamond, it can be said that the "new" statute of repose operated to bar the existing cause of action. See Shields v. Buchholz, 515 So.2d 1379, 1283 (Fla. 4th DCA 1987) (recognizing a possible exception where the cause of action accrued prior to the adoption of the statute of repose), rev. dismissed, 523 So.2d 578 (Fla. 1988). In the present case, no new statutory enactment intervened to abolish the Does' existing cause of action. Rather, the cause of action never accrued. Kush, supra.[1] The decision by the court in Kush not to address Diamond would indicate that Diamond might be limited to its facts. See also, Pullum v. Cincinnati, Inc., 476 So.2d 657, 659, n[*] (Fla. 1985); Times Publishing Co. v. W.R. Grace & Co.  Conn., 552 So.2d 314, 315 (Fla. 2d DCA 1989), rev. denied, 563 So.2d 635 (Fla. 1990).
We perceive yet another reason why the Diamond decision, in a product liability context, should not be applied to the facts at bar. In Battilla v. Allis Chalmers Mfg. Co., 392 So.2d 874 (Fla. 1980), the supreme court decided that the statute of repose was unconstitutional as applied to an injury which occurred within twelve years after delivery of a product. See Overland Constr. Co. v. Sirmons, 369 So.2d 572 (Fla. 1979) (holding unconstitutional as applied in section 95.11(3)(c), Florida Statutes (1975)). In Pullum v. Cincinnati, Inc., supra, the court overruled Battilla and held that the legislature "reasonably decided that perpetual liability places an undue burden on manufacturers, and it decided that twelve years from the date of sale is a reasonable time for exposure to liability for manufacturing of a product." Id. at 659. In resolving Pullum, the supreme court, of necessity, found that the statute of repose denies neither equal protection nor access to courts. Within seven months of the denial of rehearing in Pullum, the legislature repealed the product liability statute of repose, effective July 1, 1986. Ch. 86-272, Laws of Fla. The legislature chose not to repeal, or even address, the medical malpractice statute of repose at that time, or at any time subsequent.
Even before the Kush decision, our supreme court, in reviewing questions arising under the statute of repose, carefully selected language which we are not at liberty to ignore.
In University of Miami v. Bogorff, 583 So.2d 1000, 1003-1004 (Fla. 1991), the court ruled that the statute here in question did not violate article I, section 21, of the Florida Constitution, holding:
[A] statute of repose precludes a right of action after a specified time which is measured from the incident of malpractice, sale of a product, or completion of improvements, rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued.
* * * * * *
In Carr v. Broward County, 541 So.2d 92 (Fla. 1989), we held that the statutory repose period for medical malpractice actions does not violate the constitutional *1172 mandate of access to courts, even when applied to a cause of action which did not accrue until after the period had expired.
In Public Health Trust of Dade County v. Menendez, 584 So.2d 567, 568 (Fla. 1991), the supreme court stated that the repose period "bars any and all claims brought more than four years after the actual incident, even for acts of negligence that could not reasonably have been discovered within this period of time."
The court in Kush clearly acknowledged that the result of the majority view in that case would be to "eliminate a cause of action before it has accrued." 616 So.2d at 421. Thus, the majority expressly rejected Chief Justice Barkett's view in dissent that access to courts would be violated by "cutting off a plaintiff's right to seek legal redress before the cause of action ever existed." 616 So.2d at 425.
The Kush majority also has selected language which appears to us to be at odds with the view taken by Judge Ervin's well considered dissent. According to the supreme court, "once we determined that the statute was constitutional, our review of its merits was complete. This court is not authorized to second guess the legislature's judgment." 616 So.2d at 422. This language appears immediately after the court has stated that a statute of repose eliminates a cause of action before it has accrued. We take this as a clear signal from the supreme court that the facts of an individual case will not be considered once it is demonstrated that the incident of malpractice occurred more than four years prior to the initiation of a lawsuit.
The order of dismissal with prejudice is AFFIRMED.
WIGGINTON, J., concurs.
ERVIN, J., dissents with written opinion.
ERVIN, Judge, dissenting.
I cannot agree with the majority's decision that an action in medical malpractice, filed after the repose period had ended, and based upon a complaint which essentially alleges that plaintiffs did not know or with reason could not have known of the fact of injury until after the expiration of such period, is barred by the provisions of the repose statute, Section 95.11(4)(b), Florida Statutes (1983). I consider that application of the statute of repose, under the circumstances presented here, offends the access to courts provision of the Florida Constitution. In my judgment, this case is indistinguishable from Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981), in which our supreme court held the product liability statute of repose unconstitutional, as applied to facts showing that plaintiffs were not placed on notice of the injury until after the term of repose had expired, in that the statute was in violation of the constitution's guaranty of access to courts.
No opinion by the Florida Supreme Court has ever explicitly receded from Diamond, and the supreme court cases relied upon by the majority and in other recent opinions of this court, e.g., Whigham v. Shands Teaching Hospital & Clinics, Inc., 613 So.2d 110 (Fla. 1st DCA 1993); Padgett v. Shands Teaching Hospital & Clinics, Inc., 616 So.2d 467 (Fla. 1st DCA 1993), involved plaintiffs who were aware of the injury during the running of the repose period. See also Kush v. Lloyd, 616 So.2d 415 (Fla. 1992) (plaintiffs were on notice of their child's injury, i.e., a genetic abnormality, shortly following the child's birth); University of Miami v. Bogorff, 583 So.2d 1000 (Fla. 1991) (medical malpractice action was barred, because plaintiffs were aware within the repose period of the severe injury their son suffered). Thus, no subsequent opinion of the Florida Supreme Court upholding the constitutionality of the medical malpractice statute of repose as applied involved facts similar to those as alleged in the present case. Consequently, the panel's reliance upon such opinions, in my judgment, is misplaced.
The majority attempts to distinguish the facts in Diamond from those at bar by pointing out that in Diamond the product liability statute of repose did not take effect until long after the incident giving rise *1173 to the action, whereas in the present case the particular statute of repose was already in effect before the alleged incident of malpractice occurred. Whether or not a statute of repose is in place under such circumstances is immaterial, as I will endeavor to explain in more detail infra. Rather, the pertinent inquiry, which was set forth in Kluger v. White, 281 So.2d 1 (Fla. 1973), is whether a general right of action for redress of a particular injury existed as of the date the access to courts provision of the Florida Constitution was adopted. If it was, such right could not be impaired by the subsequent enactment of a statute unless one of the criteria listed in Kluger was satisfied. In answering the above inquiry, I consider that a more detailed recitation of the facts at bar than those stated by the majority is helpful.
Plaintiffs alleged that on September 6, 1983, Mary Doe (Doe), the daughter of John and Jane Doe, was born prematurely at Shands Teaching Hospital. In their fourth amended complaint, appellants stated that as a result of Doe's premature birth, the treating physician, an employee or agent of Shands, advised them that a blood transfusion was necessary. Appellants inquired about the danger of transmittal of the AIDS virus by blood transfusion and asked whether they could donate their own blood to avoid such possibility. The physician assured them that Doe would be given thoroughly screened blood which would not transmit the AIDS virus and stated they could not donate their own blood, because Doe had to be given neonatal blood. The appellants further alleged that a nurse employed by Shands, who was present during this conversation, confirmed the physician's statements.
Based upon the physician's representations, Doe's parents consented to the blood transfusion. The blood, however, was not screened. In June 1989, more than four years after the transfusion, Shands advised Doe's parents that their daughter, together with nine other persons, had potentially been exposed to the AIDS virus due to the blood transfusion given her in 1983. Subsequent testing confirmed that Doe had contracted the human immunodeficiency virus (HIV), a known precursor to the development of AIDS. The Does specifically alleged that it was not until June 1989 that they "knew, should or could have known ... of [their daughter's] ... contracting the AIDS or HIV virus and her injury." Appellants further alleged that the only possible means by which Doe could have contracted the virus was through the blood transfusion at Shands.
On December 8, 1989, Doe's parents, individually, and on behalf of their minor daughter, filed their action against Shands, alleging medical malpractice on the part of the physician who provided the erroneous advice regarding the infected blood and the nurse who confirmed the doctor's representations. Upon motions to dismiss filed by the defendants, the trial court ruled that Doe's parents had stated a cause of action for medical malpractice and lack of informed consent, but that the four-year repose period provided in section 95.11(4)(b) barred their action against Shands, in that it was filed more than four years from the date of the incident in question, i.e., the September 1983 blood transfusion. The court therefore granted Shands' motion to dismiss, ruling that appellants did not fall into any recognized exception to the statute of repose and entered final judgment in favor of Shands on August 14, 1991.[1]
Article I, Section 21 of the Florida Constitution, states: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." This long-standing provision first appeared in article I, section 9 of Florida's territorial constitution of 1838. 25A Fla. Stat. Ann. 480 (1991). Such provision, which has no counterpart in the federal constitution, apparently originated with the Magna Carta and "Sir Edward Coke's gloss on Chapter 29 of the 1297 Magna Carta [which] is remarkably similar" to this remedy provision. Francis E. McGovern, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am.U.L.Rev. 579, 615 n. *1174 219 (1981). See also Commentary, Section 13: Constitutional Armor for the Common Law, 35 Ala.L.Rev. 127, 128 (1984).
Historically, statutes of repose[2] were generally enacted during the early and mid-1970s by various state legislatures in response to the adoption of the "discovery rule" provided in statutes of limitation passed during the 1960s and early 1970s. The discovery rule states that a claimant's cause of action does not accrue until the claimant discovered, or through the exercise of reasonable diligence should have discovered, the injury caused by the defendant's negligence. Christopher J. Trombetta, Note, The Unconstitutionality of Medical Malpractice Statutes of Repose: Judicial Conscience Versus Legislative Will, 34 Vill.L.Rev. 397, 401 n. 18 (1989) (citing 1 D. Louisell & H. Williams, Medical Malpractice para. 13.07, at 13-20 (1988)) [hereinafter Trombetta]. The Florida Legislature first included the discovery rule in its passage of the medical malpractice statute of limitation, effective July 1, 1972. See Ch. 71-254, § 1, at 1372, Laws of Fla. The medical malpractice statute of repose was subsequently enacted, effective January 1, 1975, and commences the period of repose from the incident or occurrence giving rise to the action; it does not have an accrual provision contingent upon the discovery of the negligent act in issue. See Ch. 75-9, § 7, at 20-21, Laws of Fla.
In the federal sector, statutes of repose have been upheld against attack on due process and equal protection grounds, in that such statutes are generally considered to affect neither a suspect class nor a fundamental right under the constitution. As a result, the federal courts ordinarily apply the lowest standard of judicial review, the rational basis test, when passing on the constitutionality of such statutes. See Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir.1984); Jewson v. Mayo Clinic, 691 F.2d 405, 411 (8th Cir.1982). Moreover, the United States Supreme Court has commented that "[a] person has no property, no vested interest, in any rule of the common law." Munn v. Illinois, 94 U.S. 113, 134, 24 L.Ed. 77, 87 (1877). Nor does the constitution "`forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.'" Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595, 620-21 n. 32 (1978) (quoting Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221, 225 (1929)).
Although the United States Supreme Court has consistently recognized that statutes of limitation relate to "matters of remedy, not to destruction of fundamental rights," it has also observed that state courts are free to interpret their own constitutions in a more restrictive manner. Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 312-13, 65 S.Ct. 1137, 1141-42, 89 L.Ed. 1628, 1635 (1945). In their constructions of the various medical malpractice statutes of repose, most out-of-state jurisdictions have found no constitutional impediments to their application. See Trombetta, supra page 6, at 397-98 n. 4. In an ever-growing number of recently decided cases, however, state courts have invalidated repose statutes on the ground that they are violative of their states' particular constitutional provisions. Id. at 397-98.
In that the constitutionality of Florida's statutes of repose must be judged by this state's own unique constitutional standards and interpretative case law, rather than the decisions of other jurisdictions, Overland Construction Co. v. Sirmons, 369 So.2d 572, 575 (Fla. 1979), I turn first to our supreme court's seminal opinion in Kluger v. White, 281 So.2d 1 (Fla. 1973), in order to determine whether the four-year repose period *1175 was properly applied to bar the appellants' cause of action. In Kluger, the court announced the following test as a means of assessing whether a particular statute may be deemed violative of the access to courts provision: If a right of access to courts for redress of an injury has been provided by statute before the Declaration of Rights of the Florida Constitution was adopted, or if such right has become a part of the state's common law, the legislature cannot abolish such right without providing a reasonable alternative, unless the legislature is able to show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown. Id. at 4.
In applying the Kluger test to the facts in the instant case, I consider it obvious that an action for damages allegedly caused by another's negligence, in this case medical malpractice, is a right of redress guaranteed by article I, section 21. The crucial inquiry for deciding whether a statute of repose has the effect of abolishing a cause of action is not whether the repose statute was in existence at the time of the event that triggered the commencement of the period for filing of the cause of action  as is apparently the test advocated by the majority in the present case  but is whether a general right of access to the courts for redress of an injury was available pursuant either to a statute or the common law of this state predating the adoption of the Declaration of Rights. If such statutory or common law right was in existence before the adoption of the Florida Constitution, the legislature is considered to be without the constitutional power to enact subsequent legislation having the effect of abolishing such right  regardless of whether the legislation predated the commencement of the specific cause of action  unless, of course, the enactment complied with the other requisites of the Kluger test. Id.
The supreme court's discussion of Kluger in Overland Construction Co. v. Sirmons, 369 So.2d 572 (Fla. 1979), provides a thorough explanation regarding the application of the Kluger test to a statute of repose. There the court, in first determining that a cause of action for certain injuries occurring on real property had been abolished by the legislature's enactment of the statute of repose relating to the completion of improvements to real property,[3] considered it unnecessary to determine whether the statute was in effect before or after the event triggering the commencement of the repose period. In deciding that the first component of Kluger had been satisfied, the court in Overland stated that the proper application of Kluger required it to determine whether a right of action for redress of the particular injury was provided by statute or was part of the common law of the state as of the date the access to courts provision of the Florida Constitution was readopted in 1968. Id. at 573-74. The court concluded, from its examination of pertinent case law, that the right of action for the type of injury suffered by the plaintiff then existed as part of the common law, and that the statute of repose relating to the completion of improvements to real property, if applied, would have the effect of barring a cause of action before it legally existed. Id. at 574-75.
The Kentucky Supreme Court took a similar approach in McCollum v. Sisters of Charity of Nazareth Health Corp., 799 S.W.2d 15 (Ky. 1990), in deciding that the Kentucky medical malpractice statute of repose[4] violated the "open courts" provision of the Kentucky Constitution. Although the opinion does not discuss whether the statute was in effect on the date the negligent act or omission occurred, the court apparently considered that such inquiry was immaterial to its analysis. In the court's view, the determinative date for considering whether the statute of repose had the effect of abolishing the right of action for medical malpractice was "whether the cause of action affected by a statute had become established prior to the adoption of the Kentucky Constitution in 1891. *1176 If a common-law right of action [then] existed for medical malpractice, the state legislature has no constitutional power to extinguish it." Id. at 19 (citation omitted). The court concluded that such right had existed long before the 1891 adoption of the constitution, and that application of the statute of repose to the plaintiff's cause of action had the effect of barring the cause of action before it legally existed, i.e., before notice of the injury was given to the plaintiff.
Similarly, in the present case, although no explicit statutory cause of action for medical malpractice had been enacted as of the date of the readoption of the Florida Constitution in 1968, there existed a common law right of action for same long before such date. See City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954); Buck v. Mouradian, 100 So.2d 70 (Fla. 3d DCA), cert. denied, 104 So.2d 592 (Fla. 1958). Moreover, there existed at such time a general right of redress in the form of a negligence action against health care providers and other defendants if the action was commenced within four years after the accrual of the cause of action. § 95.11(4), Fla. Stat. (1967). In that such right of action was in existence before the readoption of the Florida Constitution in 1968, the subsequent enactment of the medical malpractice statute of repose, effective January 1, 1975, had the effect of abolishing the Does' right of action under the circumstances, because, as they had alleged in their complaint, the fact of injury was unknown to them until after the repose period had elapsed.
I also conclude that the statute failed to provide the plaintiffs with any alternative remedy. The constitutional right of access to courts requires that an effective and reasonable alternative remedy be provided by due course of law for vindication of an injured person's constitutional interests, and that the remedy be substantially equal in value to the remedy abrogated by affording essentially comparable substantive protection to one's person, property, or reputation, although the form of the substituted remedy may be different. Cf. Employers Ins. of Wausau v. Abernathy, 442 So.2d 953, 954 (Fla. 1983) (workers' compensation benefits recognized as substitute remedy for civil action for damages); Chapman v. Dillon, 415 So.2d 12, 16-17 (Fla. 1982) (no-fault automobile statutes provide a reasonable alternative to tort litigation). No such remedy has been provided to the Does. Thus, I consider that the first part of the Kluger test has been satisfied, i.e., a showing has been made that the statute of repose had the effect of abolishing the Does' right of action for damages without providing an adequate remedy.
The only remaining question is whether the legislature has shown an overpowering public necessity for the application of the statute, and an absence of a less onerous alternative. Before the statute can pass constitutional muster, both prongs of the latter portion of the Kluger test must be met. Psychiatric Assocs. v. Siegel, 610 So.2d 419, 423 (Fla. 1992); Smith v. Department of Ins., 507 So.2d 1080, 1088 (Fla. 1987).
In the preamble to the Medical Malpractice Reform Act of 1975, the legislature expressed the public necessity for creating the four-year repose period in the following terms:
WHEREAS, the cost of purchasing medical professional liability insurance for doctors and other health care providers has skyrocketed in the past few months; and
WHEREAS, it is not uncommon to find physicians in high-risk categories paying premiums in excess of $20,000 annually; and
WHEREAS, the consumer ultimately must bear the financial burdens created by the high cost of insurance; and
WHEREAS, without some legislative relief, doctors will be forced to curtail their practices, retire, or practice defensive medicine at increased cost to the citizens of Florida; and
WHEREAS, the problem has reached crisis proportion in Florida, NOW THEREFORE... .
Ch. 75-9, at 14-15, Laws of Fla. In Carr v. Broward County, 541 So.2d 92, 95 (Fla. 1989), the Florida Supreme Court approved *1177 the Fourth District's decision in Carr v. Broward County, 505 So.2d 568 (Fla. 4th DCA 1987), in which the latter court held that the legislature had found an overriding public necessity for enacting the medical malpractice statute of repose and affirmed the application of the statute of repose under the facts of that case. Accord Kush v. Lloyd, 616 So.2d 415 (Fla. 1992). It appears from a reading of the Fourth District's opinion in Carr that the plaintiffs were aware before the expiration of the repose period of the existence of their child's injury.[5] Although it is not stated in either of the opinions in Carr whether the plaintiffs challenged the legislative findings supporting the enactment of the medical malpractice statute of repose, I glean from certain dicta from the Fourth District's opinion discussed below that the legislative findings could not support a judicial determination of overpowering public necessity as applied to a factual situation, such as that alleged at bar, in which a plaintiff neither knows, nor with the exercise of due diligence was able to know until after the repose period had elapsed, of the existence of the injury giving rise to the cause of action.
In its discussion of several decisions of the Florida Supreme Court involving various constructions of the statutes of repose, the Fourth District in Carr cited Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981), in which the supreme court held unconstitutional the product liability statute of repose as applied to facts showing that from July 27, 1955 until April 1, 1956, Nina Diamond, while yet unborn, had a drug known as diethylstilbestrol administered to her through her pregnant mother. The Diamonds filed their product liability action in April 1977, alleging that they first learned in May 1976 that teenaged girls whose mothers had taken the drug during pregnancy, were developing cancerous or precancerous conditions. The court concluded that the statute acted as a denial of access to courts because it barred Diamond's cause of action before it ever existed. Id. at 672. In an important special concurring opinion, Justice McDonald observed that "[w]hen an injury has occurred but a cause of action cannot be pursued because the results of the injury could not be discovered, a statute of limitation barring the action does, in my judgment, bar access to the courts and is constitutionally impermissive."[6]Id.
The Fourth District concluded its discussion of the Diamond decision with the following observations:
The case leaves several questions unanswered, including whether, under the fact pattern involved in Diamond, the legislature could ever bar the right by an appropriate showing of public necessity. An inference that the legislature may not validly do so could be drawn from the court's discussion.
Carr, 505 So.2d at 572. In approving the Fourth District's decision, the supreme court stated:
We find that the Fourth District Court recognized the principles of Kluger and properly applied them in determining that the legislature had found an overriding public necessity in its enactment *1178 of section 95.11(4)(b). Accordingly, we hold that the subject statute was constitutionally enacted and bars the Carrs' medical malpractice action under the circumstances of this cause.

Carr, 541 So.2d at 95 (emphasis added).
Even if one assumed that the supreme court in Carr implicitly found sufficient legislative facts supporting a determination of an overriding public necessity for the enactment of the repose provision, as applied to a situation in which a plaintiff could not reasonably be aware during the repose period of the fact of injury, one's inquiry does not end at this point. Kluger, as previously stated, requires not only a legislative demonstration of overriding public necessity, but a showing as well that no alternative method of complying with such necessity is present, i.e., "an absence of any less onerous alternative means of meeting that end." Overland, 369 So.2d at 573. Neither the supreme court nor the Fourth District in Carr explicitly addressed the final portion of the Kluger test.
As applied to the facts at bar, I fail to find the satisfaction of the above element. I regard the Arizona Supreme Court's analysis in Kenyon v. Hammer, 142 Ariz. 69, 688 P.2d 961 (1984), used to test the constitutionality of that state's medical malpractice statute of repose, to be highly pertinent to a consideration of whether an alternative method exists which would satisfy the perceived public necessity of reducing the spiraling costs of medical professional liability insurance. There the court stated that the abolition of the discovery rule could be considered valid only if a compelling state interest was to be served and the statute was necessary to achieve a legislative objective. Kenyon, 688 P.2d at 975.
Although the court concluded that no compelling state interest had been demonstrated, it continued that even assuming such an interest were present, there was no showing that the statute could achieve the stated legislative goals of reducing medical malpractice premiums and making quality medical care available to the public at reasonable cost. The court pointed out that no facts were adduced to support the hypothesis that the abolition of the discovery rule was the least restrictive means practically available to achieve these goals. Id. at 979. Among other things, the court cited statistics showing "that over 88% of all medical malpractice injuries which result in claims are reported within the first two years following injury, that 95 to 96% of all claims have been reported within three years, 97% within four years and only 2% are unreported after five years." Id. at 978. It continued that the "long tail," which may have been created by the adoption of the discovery rule in the statute of limitation, appeared to be of little significance and was more susceptible of being managed by other measures, such as shortening the statute of limitation for medical malpractice cases, or regulating insurance premiums and procedures, rather than by abolishing the rule.[7]Id. at 979.
In the case at bar, in contrast to Kenyon, appellants presented no evidence challenging the legislative finding supporting the enactment of the medical malpractice statute of repose. Nevertheless, I do not consider appellants' omission to be fatal to their challenge of the statute. This is so because, as stated, appellees made no showing that the abolishment of a cause of action, under circumstances in which appellants *1179 allege that they were unaware of the existence of their child's injury until after the passage of the repose term, was the least restrictive means available to achieve the legislative goal of reducing medical costs, and a court may not presume from the enactment of the statute that no such alternative method exists. Cf. University of Miami v. Echarte, 585 So.2d 293, 301 (Fla. 3d DCA 1991) (in considering whether a statute eliminating noneconomic damages in excess of the statutory cap was a violation of one's right of access to courts, the court stated that it would not infer simply from the passage of the act that the statutory enactment was the least onerous method of attaining the goal of reducing malpractice claims).
Without any such explicit legislative finding, I consider that the statute's constitutionality, as applied to a factual situation in which the plaintiffs alleged they received no actual or reasonable notice of injury before the expiration of the repose period, must be measured by the supreme court's rule in Diamond, and the following language from the Fourth District's opinion in Carr strongly influences my conclusion:
The statute will not be applied or is impermissibly applied to the case of one injured by a product where the ill effects of that injury do not manifest themselves within the statutory period. Diamond.

Carr, 505 So.2d at 573.
I therefore will not indulge in the presumption that the supreme court's approval of the statute in Carr, Bogorff, or Kush was intended to extend beyond facts not then before the court, i.e., such as those at bar in which plaintiffs were not aware of the injury suffered until after the lapse of the statutory period. The rule is firmly established that a prior decision has no precedential effect in a later case as to any question not raised and not considered in the earlier opinion. In re Blankenship's Estate, 122 So.2d 466 (Fla. 1960); City of Miami Beach v. Traina, 73 So.2d 860 (Fla. 1954); City of Miami v. Stegemann, 158 So.2d 583 (Fla. 3d DCA 1963).
Finally, I note that the supreme court has never receded from its holding in Diamond, and, until it does, an appellate district court is without the power to overrule controlling precedent of the Florida Supreme Court. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). I am therefore of the opinion that, as applied to facts alleging the inability of the plaintiffs to be aware of the existence of an injury until after the expiration of the repose period, the statute must be considered an unconstitutional denial of the parties' right of access to courts in that no showing was established of overpowering public necessity, or that the abolition of plaintiff's cause of action was the least onerous means of achieving the legislative goal of reducing malpractice insurance premiums.
Were our constitutional provision of access to courts interpreted as to allow the legislature the unrestricted power, in the absence of vested rights, to create new rights or abolish old ones, such interpretation "would result in the legislative power prevailing in every case, and would deprive the constitutional [guarantee] ... of any meaningful content or force." Berry ex rel. Berry v. Beech Aircraft Corp., 717 P.2d 670, 678-79 (Utah 1985). As observed by the Florida Supreme Court in Smith v. Department of Insurance, 507 So.2d 1080, 1089 (Fla. 1987): "There are political systems where constitutional rights are subordinated to the power of the executive or legislative branches, but ours is not such a system."
The majority, as is its prerogative, has declined to certify a question to the Florida Supreme Court as one of great public importance asking whether its Diamond holding has continuing vitality in light of later decisions by the court upholding the constitutionality of the medical malpractice statute of repose as applied to facts disclosing notice of injury to the plaintiffs therein within the repose period. Because of the uncertainty that persists, and particularly so in that the court has never receded from its holding in Diamond, I consider the present case to be an appropriate one for the court to resolve any lingering questions as to its intent by the discretionary exercise of its conflict jurisdiction. In my judgment, *1180 the issue could be simply decided by answering the following question:
DOES THE FOUR-YEAR STATUTE OF REPOSE, PROVIDED IN SECTION 95.11(4)(b), FLORIDA STATUTES, VIOLATE ARTICLE I, SECTION 21 OF THE FLORIDA CONSTITUTION, IF IT IS APPLIED TO BAR A MEDICAL MALPRACTICE ACTION WHEN THE ALLEGED ACT OF MALPRACTICE OCCURRED MORE THAN FOUR YEARS BEFORE THE ACTION WAS FILED, BUT THE INJURY RESULTING FROM THE ALLEGED MALPRACTICE DID NOT MANIFEST ITSELF WITHIN THE STATUTORY FOUR-YEAR PERIOD?
NOTES
[1] "A statute of repose `... does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action from ever arising.' Rosenberg v. Tower of North Bergen, 61 N.J. 190, 293 A.2d 662, 667 (1972)." Walker v. Miller Elec. Mfg. Co., 591 So.2d 242, 244 (Fla. 4th DCA 1991), quoting Lamb By & Through Donaldson v. Volkswagenwerk Aktiengesellschaft, 631 F. Supp. 1144, 1147 (S.D.Fla. 1986), aff'd by, Eddings on behalf of Eddings v. Volkswagenwerk, 835 F.2d 1369 (11th Cir.), cert. denied, 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 44 (1988).
[1] During the pendency of this appeal, Mary Doe, not yet nine years of age, died.
[2] A statute of repose precludes a right of action after a specified time, which is measured from the sale of a product, the completion of improvements to real property, or an incident of medical malpractice. Its effect is to cut off a right of action regardless of the time of its accrual or the time of a plaintiff's notice of the invasion of a legal right. University of Miami v. Bogorff, 583 So.2d 1000, 1003 (Fla. 1991); Melendez v. Dreis & Krump Mfg. Co., 515 So.2d 735, 736 (Fla. 1987). A statute of limitation, in contrast, sets a time limitation within which an action must be brought, which begins to run at the time an injury occurs or is discovered. Bauld v. J.A. Jones Constr. Co., 357 So.2d 401, 402 (Fla. 1978).
[3] Section 95.11(3)(c), Florida Statutes (1975), effective January 1, 1975.
[4] Ky.Rev.Stat. 413.140(2).
[5] The Fourth District's recitation of the facts shows that the plaintiffs' child, delivered on December 20, 1975, was later diagnosed as suffering from severe brain damage, and that the allegations in the complaint seeking damages for medical malpractice, filed on September 26, 1985, stated only that the plaintiffs were unable with the exercise of due diligence to discover the fact of negligence, not the fact of injury, within the limitation or repose periods required by the statute.
[6] In a later opinion, the supreme court, while expressly receding from its earlier decision in Battilla v. Allis Chalmers Manufacturing Co., 392 So.2d 874 (Fla. 1980), involving the constitutionality of the product liability statute of repose, continued to recognize the Diamond rule and specifically adopted Justice McDonald's concurring opinion therein, observing that if the statute of repose had been there applied, the plaintiffs' claim would have been barred even though the injury allegedly caused by the defective product did not become evident until more than 12 years after the product was ingested, a result which unquestionably would have been a denial of access to courts. Pullum v. Cincinnati, Inc., 476 So.2d 657, 659 (Fla. 1985), appeal dismissed, 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986).
[7] Florida courts have similarly subjected underlying legislative findings to judicial scrutiny. See City of Tampa v. State ex rel. Evans, 155 Fla. 177, 178, 19 So.2d 697, 697 (1944) ("[L]egislative findings of fact are not conclusive and may be contested in the court. In such contest the burden is on the contesting party... ."). See also University of Miami v. Echarte, 585 So.2d 293 (Fla. 3d DCA 1991), in which the Third District held Sections 766.207 and 766.209, Florida Statutes (Supp. 1988), unconstitutional as violative of the claimants' right of access to courts, reasoning that the legislature failed to show an overpowering public necessity for the abolishment of a claimant's unlimited right to obtain damages. Specifically the court noted that the fact that insurance is virtually unaffordable for some physicians did not itself demonstrate a danger that health care is becoming unavailable. Id. at 300-01. It also observed that the findings of the Academic Task Force concerning prospective reductions in loss payments were based on hypothetical assumptions rather than empirical data and, as such, provided an unreliable basis for imposing a cap on noneconomic damages. Id. at 301.