LAWRENCE, Judge.
Earl Barnes (Barnes), formerly employed as a sandblaster, filed a negligence action against appellees (manufacturers), producers of sand used in sandblasting operations. He alleged that he had contracted a lung disease (silicosis) from exposure to silica dust emanating from the sand used in sandblasting operations and that appellees’ products caused or contributed to his illness. Barnes claimed that he was exposed to the silica dust from 1972 to 1974. The manufacturers denied the material allegations of Barnes’ complaint and argued that Barnes’ action was barred by the now-repealed products liability statute of repose, section 95.031(2), Florida Statutes (1975).[1] The trial court granted the manufacturers’ motion for summary judgment. We reverse.
Barnes’ left lung was surgically removed on July 16,1984, and he was informed by his physicians that his lung had been removed because of cancer; however, he was told several weeks later that the lung had been removed because of a fungal infection known as actinomycosis. Barnes testified that he did not know that his lung problems were related to silicosis or exposure to silica dust until 1992, and that the diagnosis of silicosis was not confirmed by tissue analysis until 1995.
Section 95.031, Florida Statutes (1975), the statute of repose for products liability cases, eliminated any cause of action based on fraud or products liability filed more than twelve years after the fraud was committed or after the product was sold to its original purchaser. The statute was subsequently held unconstitutional as applied to the facts of the case by the supreme court in Battilla v. Allis Chalmers Mfg. Co., 392 So.2d 874 (Fla.1980), on the grounds that the statute violated Florida’s constitutional right of access to the courts. However, no facts were recited in the case.
One year later, the supreme court decided Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla.1981). In Diamond, a pregnant woman ingested the drug diethylstilbes-trol (DES) from 1955 to 1956. The daughter born of the pregnancy developed cancer in 1976 allegedly as a result of the mother’s ingestion of the drug. Section 95.031, Florida Statutes, was in effect at the time the action in Diamond was brought. The supreme court explained that the statute of repose was unconstitutional as applied in Diamond because it barred the plaintiffs’ right of action “before it ever existed” and therefore “violate[d] the Florida Constitution’s guaranty of access to courts.” Diamond, 397 So.2d at 672. Justice McDonald, specially concurring in Diamond, noted:
The sale and ingestion of the alleged defective product took place in 1955-1956. It is alleged that the effect of that ingestion did not materialize until after the plaintiff reached puberty. In this plaintiffs case the claim would have been barred, even though the wrongful act had taken place, before the injury became evident. She had an accrued cause of action but it was not recognizable, through no fault of hers, because the injury had not manifested itself. This is different from a situation where the injury is not inflicted for more than twelve years from the sale of the product. When an injury has occurred but a cause of action cannot be pursued because the results of the injury could not be discovered, a statute of limitations barring the action does, in my judg *331 ment, bar access to the courts and is constitutionally impermissive.
Diamond, 397 So.2d at 672.
Several years later, the supreme court expressly receded from Battilla in Pullum v. Cincinnati, Inc., 476 So.2d 657 (Fla.1985), holding section 915.031(2) constitutional. Pul-lum was injured in 1977 by a press brake machine delivered to the original purchaser in 1966. The appellant sued the manufacturer in 1980, more than twelve years after the date of delivery. The supreme court, in affirming the trial court’s grant of summary judgment in favor of the manufacturer, expressly receded from Battilla and held that section 95.031(2) did not violate the right of access to the courts guaranteed under article I, section 21 of the Florida Constitution. The court explained that the legislature enacted section 95.031(2) because it found that “perpetual liability places an undue burden on manufacturers,” and because “twelve years from the date of sale is a reasonable time for exposure to liability for manufacturing of a product.” Pullum, 476 So.2d at 659.
However, the Pullum court distinguished Diamond, stating:
Pullum also refers to Diamond v. E.R. Squibb and Sons, Inc., 397 So.2d 671 (Fla.1981), as being in accord with Battilla. In Diamond, we held that the operation of section 95.031(2) operated to bar a cause of action before it accrued and thereby denied the aggrieved plaintiff access to the courts. But Diamond presents an entirely different factual context than existed in either Battilla or the present case where the product first inflicted injury many years after its sale. In Diamond, the defective product, a drug known as diethylstilbestrol produced by Squibb, was ingested during the plaintiff mother’s pregnancy shortly after purchase of the drug between 1955-1956. The drug’s effects, however, did not become manifest until after plaintiff daughter reached puberty. Under these circumstances, if the statute applied, plaintiffs’ claim would have been barred even though the injury caused by the product did not become evident until over twelve years after the product had been ingested. The legislature, no doubt, did not contemplate the application of this statute to the facts in Diamond. Were it applicable, there certainly would have been a denial of access to the courts.
Pullum, 476 So.2d at 659 n*.
The Third District Court of Appeal, in Owens-Corning Fiberglass Corp. v. Corcoran, 679 So.2d 291 (Fla. 3d DCA 1996), review denied, 690 So.2d 1300 (Fla.1997), held that applying section 95.031(2) to facts similar to those alleged in the instant case “would result in an unconstitutional denial of access to the court.” Corcoran, 679 So.2d at 294. In Corcoran, Robert Galotti, the decedent of James Corcoran, sued Owens-Corning Fiberglass Corporation for injuries allegedly arising out of Corcoran’s exposure to asbestos-containing products between 1966 and 1972. The plaintiff prevailed in the trial court. On appeal, the Corcoran court, in affirming, held that Diamond was still viable, and added:
Diamond, Pullum, and Conley confirm our analysis that because a public necessity was never enunciated, demonstrated, or contemplated for application of the now defunct section 95.031(2) to a case such as this one, resulting in a long delay in manifestation of symptoms that will support a medical diagnosis of injury, such application is constitutionally impermissive.
Corcoran, 679 So.2d at 294-95. The Corcor-an court went on to explain that “the Pullum court maintained the exception earlier established in Diamond,.” and that “[n]o Supreme Court case post Pullum reverses or recedes from Diamond” Corcoran, 679 So.2d at 293. Indeed, the supreme court has suggested the continued viability of Diamond in a number of eases. In Conley v. Boyle Drug Co., 570 So.2d 275 (Fla.1990), a case involving the ingestion of DES, the court noted:
Adoption of such a theory of liability would not be the first time this Court has recognized the unique circumstances surrounding the injury suffered by the DES plaintiff. We have recognized that, because of the delay between the mother’s ingestion of the drug and the manifestation of the injury to the plaintiff, DES cases must be *332 accorded different treatment than other products liability actions for statute of repose purposes. See Pullum v. Cincinnati, Inc., 476 So.2d 657, 659 n. * (Fla.1985), appeal dismissed, 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986); Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla.1981).
Conley, 570 So.2d at 283.
In University of Miami v. Bogorff, 583 So.2d 1000 (Fla.1991), a products liability action, a young cancer patient was treated with the drug methotrexate from 1971 to 1972. Several months after treatment was completed, the child became paralyzed and suffered brain damage. The child’s parents sued the drug manufacturer. The court, in holding that the plaintiffs’ claim against the manufacturer was timed-barred, explained that the statute of limitations began to run when the parents first became aware of the child’s paralysis and brain-damaged condition, symptoms which occurred only a few months after the last dose of the drug was administered. The court implied that since the parents knew the child had been treated with the drug in the months prior to the injury, they should have realized that the drug likely caused the injury. The Bogorff court distinguished Diamond, stating that the Bogorffs case was “not a case where a drug was ingested and the alleged effects did not manifest themselves until years later.” Bogorff, 583 So.2d at 1004 (citing Diamond).
The trial court, in the instant case, relied on a series of cases, including Doe v. Shands Teaching Hosp. & Clinics, Inc., 614 So.2d 1170 (Fla. 1st DCA 1993), and Damiano v. McDaniel, 689 So.2d 1059 (Fla.1997), for the proposition that both the Florida Supreme Court and this court have held that statutes of repose may operate to foreclose a cause of action even before it accrues. These cases, however, involved the medical malpractice statute of repose, which has been distinguished from the products liability statute of repose. As the Corcoran court noted:
It is important to stress that our decision today in no way refers to or affects application of the medical malpractice statute of repose. The overriding public necessity of its operation has been acknowledged and is set out in Carr v. Broward County, 541 So.2d 92, 95 (Fla.1989) (holding “section 95.11(4)(b) was properly grounded on an announced public necessity and no less stringent measure would obviate the problems the legislature sought to address, and thus the statute does not violate the access-to-courts provision.”) Nor does our decision affect the general application of section 95.031(2), a question settled in Pullum.
Corcoran, 679 So.2d at 294. Although the supreme court has held section 95.11(4)(b) constitutional in medical malpractice cases involving latent injuries, the court has made no similar finding with regard to products liability cases involving latent injuries. Accordingly, in contrast to the medical malpractice cases, Barnes’ knowledge of the connection between the disease and his exposure to the defective product is a factual issue. Unlike the medical malpractice cases, knowledge of a possible connection between the infliction of injury and the resultant symptoms is still necessary in a latent-injury products liability case.
The manufacturers in the instant case argue that Barnes’ injury “manifested” itself as early as 1984, when surgeons removed his left lung. We disagree and hold that “manifestation” of a latent injury in a products liability claim occurs when the plaintiff is on notice of a causal connection between exposure to the allegedly defective product and the resultant injury. The question of when the plaintiff should reasonably have been on notice of the connection is generally one for the jury.
The court in Corcoran did not address the question of when the plaintiffs injury “manifested” itself except to note that the “manifestation” of symptoms must be sufficient to “support a medical diagnosis.” Corcoran, 679 So.2d at 295. This reasoning comports with other cases that suggest that manifestation of injury necessarily presupposes the *333 plaintiffs knowledge of the relationship between the symptoms of the disease and exposure to the allegedly defective product. For example, in Celotex Corp. v. Copeland, 471 So.2d 533 (Fla.1985), an asbestosis case, the court held “in a case where the injury is a ‘creeping disease,’ like asbestosis, the action accrues when the accumulated effects of the substance manifest themselves in a way which supplies some evidence of the causal relationship to the manufactured product.” Celotex Corp., 471 So.2d at 539. See also Colon v. Celotex Corp., 465 So.2d 1332 (Fla. 3d DCA 1985), quashed on other grounds, 523 So.2d 141 (Fla.1988). Similarly, in the instant ease, the issue of when Barnes’ illness manifested itself was an issue of fact. Grant of summary judgment was, therefore, improper.
In sum, we agree with the analysis in Corcoran, and reverse the trial court’s order granting summary judgment. Because we remain uncertain as to the continued viability and breadth of the exception established in Diamond, we certify to the supreme court the following question as one of great public importance:
IS THE EXCEPTION ESTABLISHED IN DIAMOND V. E.R. SQUIBB & SONS, INC., 397 So.2d 671 (Fla.1981), STILL VIABLE IN VIEW OF THE COURT’S RECENT DECISIONS HOLDING THE MEDICAL MALPRACTICE STATUTE OF REPOSE CONSTITUTIONAL?
REVERSED and remanded for consistent proceedings.
JOANOS, J. and SHIVERS, DOUGLASS B., Senior Judge, concur.

. Section 95.031, effective January 1, 1975, and repealed July 1, 1986, provided:
Computation of time. — Except as provided in subsection 95.051(2) and elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.
(1) A cause of action accrues when the last element constituting the cause of action occurs ....
(2) Actions for products liability and fraud under section 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in subsection 95.11(3) but in any event within twelve (12) years after the date of delivery of the completed product to its original purchaser or the date of the commission of the alleged fraud, regardless of the date the defect in the product or the fraud was or should have been discovered.